STATE of Alaska, Petitioner,

v.

DUTCH HARBOR SEAFOODS, LTD., Respondent.

STATE of Alaska, Petitioner,

v.

TRIDENT SEAFOODS CORP., Respondent.

No. S–6919.

Supreme Court of Alaska.

Oct. 16, 1998.

---

Eric A. Johnson, W.H. Hawley, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Joel H. Bolger, Jamin, Ebell, Bolger & Gentry, Kodiak, and Walter W. Mason, Jamin, Ebell, Bolger & Gentry, Seattle, for Respondents.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION ON REHEARING

MATTHEWS, Justice.

The question presented in these consolidated cases is whether entities charged with strict liability commercial fishing violations are entitled to a trial by jury.[1] We answer this question in the negative. Such violations are minor offenses which do not fall within established standards for determining whether a criminal jury trial is required. Cases prosecuting such violations are nonetheless criminal rather than civil in nature; therefore a civil jury trial is not required.

## I. Procedural Setting

Respondents Dutch Harbor Seafoods, Ltd. and Trident Seafoods Corp. were charged with strict liability commercial fishing violations under AS 16.05.722(a). Specifically, they were charged with unlawful failure to register vessels within registration area "J" before operating trawl gear, in violation of 5 AAC 28.020(a) and (c),[2] and with unlawful

---

1. This is a legal question to which we apply our independent judgment. *See Swanner v. Anchorage Equal Rights Comm'n,* 874 P.2d 274, 277 (Alaska 1994).

2. 5 AAC 28.020 provides in relevant part:

(a) Before a person uses a vessel to operate groundfish gear in the territorial waters of Alaska, except for the Eastern Gulf of Alaska registration area, the vessel owner or the owner's autho-

rized agent shall register the vessel with the department. However, the commissioner may waive this registration requirement for a specific fishery or season if the commissioner considers waiver to be necessary.

. . . .

(c) Before operating groundfish gear within a registration area, the vessel owner, or the owner's authorized agent, shall complete the registration requirements by mail or in person at a

possession of fish taken by an unregistered vessel in violation of 5 AAC 39.197.[3]

Respondents moved for trial before a jury, arguing that they were entitled to a jury trial under article I, sections 11 and 16 of the Alaska Constitution.[4] At oral argument respondents asserted that the State would be seeking a forfeiture of some $158,000 from Trident and $110,000 from Dutch Harbor, representing in each case the value of the fish on board. The State did not dispute the

substance of this assertion. Respondents' motions were granted.

The State petitioned the court of appeals for review of this ruling; the petition was denied. The State then petitioned this court for hearing. We granted the petition.

## II. *Alaska Statute 16.05.722 Described*

One who is accused of violating commercial fishing regulations may be charged either with a "violation" under AS 16.05.722,[5] or with a misdemeanor under AS 16.05.723.[6]

department office located within the registration area. A completed form validated by the department satisfies the registration requirements. In the form, the department may require check-in and check-out procedures for fishing specified subsections within the registration area. A copy of the completed form must be retained onboard a vessel operating groundfish gear in the registration area.

**3.** 5 AAC 39.197 provides:
No person may possess, purchase, sell, barter or transport fish within the state or within water subject to the jurisdiction of the state if that person knows or has reason to know that fish were taken or possessed in contravention of 5 AAC 03—5 AAC 39.

**4.** Article I, section 11 of the Alaska Constitution provides:
In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve; except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.
Article I, section 16, provides:
In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve.

**5.** AS 16.05.722 provided during the relevant time frame:
(a) A person who without any culpable mental state violates AS 16.05.440—16.05.690, or a regulation of the Board of Fisheries or the department governing commercial fishing, is guilty of a violation and upon conviction is punishable by a fine of not more than
(1) $3,000 for a first conviction; and

(2) $6,000 for a second conviction or subsequent conviction.
(b) In addition, the court shall order forfeiture of any fish, or its fair market value, taken or retained as a result of the commission of the violation. For purposes of this subsection, it is a rebuttable presumption that all fish found on board a fishing vessel used in or in aid of a violation, or found at the fishing site, were taken or retained in violation of AS 16.05.440—16.05.690 or a commercial fisheries regulation of the Board of Fisheries or the department. It is the defendant's burden to show by a preponderance of the evidence that fish on board or at the site were lawfully taken and retained.
(c) A person charged with a violation under this section is entitled to a trial by court but not by jury, and is not entitled to representation at public expense.

**6.** AS 16.05.723 provides:

(a) A person who negligently violates AS 16.05.440—16.05.690, or a regulation of the Board of Fisheries or the department governing commercial fishing, is guilty of a misdemeanor and in addition to punishment under other provisions in this title, including AS 16.05.195 and 16.05.710, is punishable upon conviction by a fine of not more than $15,000 or by imprisonment for not more than one year, or by both. In addition, the court shall order forfeiture of any fish, or its fair market value, taken or retained as a result of the commission of the violation, and the court may forfeit any vessel and any fishing gear, including any net, pot, tackle, or other device designed or employed to take fish commercially, that was used in or in aid of the violation. Any fish, or its fair market value, forfeited under this subsection may not also be forfeited under AS 16.05.195. For purposes of this subsection, it is a rebuttable presumption that all fish found on board a fishing vessel used in or in aid of a violation, or found at the fishing site, were taken or retained in violation of AS 16.05.440—16.05.690 or a commercial fisheries regulation of the Board of Fisheries or the department, and it is the defendant's burden to show by a preponderance of the evidence that fish on board or at the site were lawfully taken and retained.

Guilt under subsection .722(a) does not require any culpable mental state; punishment is by a fine of not more than $3,000 for a first conviction and $6,000 for a second or subsequent conviction. A person guilty of a violation under subsection .722(b) may also be ordered to forfeit fish, or the fair market value of fish, taken as a result of the commission of the violation. Subsection .722(c) expressly provides that one who is charged with a violation is not entitled to a trial by jury. By contrast, when a misdemeanor is charged under section .723, a culpable mental state of at least negligence must be proven; punishment is by a fine of not more than $15,000 or by imprisonment for not more than one year, or by both. A misdemeanor conviction can carry with it an order for forfeiture of illegally caught fish or their fair market value as in section .722, and the forfeiture of the vessel and gear. Enhanced fines are also imposed in certain circumstances under subsections .723(b) and (c). A jury trial is available to persons charged under section .723.

## III. *Article I, Section 11 of the Alaska Constitution Does Not Apply*

Article I, section 11 of the Alaska Constitution applies only to "criminal prosecutions." The question here is whether a strict liability commercial fishing violation comes within the meaning of this term.

In *Baker v. City of Fairbanks*, 471 P.2d 386, 402 (Alaska 1970), we discussed the meaning of the term "criminal prosecutions." We stated that the term includes (1) offenses in which a direct penalty may be incarceration, (2) offenses which may result in the loss of a valuable license as punishment, and (3) offenses which, even if incarceration is not a possible punishment, still carry a connotation of criminality. With respect to the last factor, we noted that a heavy enough fine may carry such a connotation:

> In extending the right to jury trial, we define the category of "criminal" prosecutions as including any offense a direct penalty for which may be incarceration in a jail or penal institution. It also includes offenses which may result in the loss of a valuable license, such as a driver's license or a license to pursue a common calling, occupation, or business.[28] It must also include offenses which, even if incarceration is not a possible punishment, still connote criminal conduct in the traditional sense of the term.[29]

> Excluded from the requirement of jury trial are such relatively innocuous offenses as wrongful parking of motor vehicles, minor traffic violations, and violations which relate to the regulation of property, sanitation, building codes, fire codes, and other legal measures which can be considered regulatory rather than criminal in their thrust, so long as incarceration is not one of the possible modes of punishment.[7]

28  This does not cover revocation of licenses pursuant to administrative proceedings where lawful

(b) If a person is convicted under this section of one of the following offenses, then, in addition to the penalties imposed under (a) of this section, the court may impose a fine equal to the gross value of the fish found on board or at the fishing site at the time of the violation:
(1) commercial fishing in closed waters;
(2) commercial fishing during a closed period or season;
(3) commercial fishing with unlawful gear, including a net, pot, tackle, or other device designed or employed to take fish commercially; or
(4) commercial fishing without a limited entry permit holder on board if the holder is required by law or regulation to be present.
(c) Upon a third misdemeanor conviction within a period of 10 years for an offense listed in (b) of this section or any combination of offenses listed in (b) of this section, the court shall impose, in addition to any penalties imposed under (a) of this section, a fine equal to three times the gross value of the fish found on board

or at the fishing site at the time of the offense, or a fine equal to $10,000, whichever is greater.

7.  In *Alexander v. City of Anchorage*, 490 P.2d 910, 912–13 (Alaska 1971), we synthesized our holding in *Baker* as follows:

> We defined "criminal prosecution" as including "any offense a direct penalty for which may be incarceration in a jail or penal institution." We also included in the definition of that term offenses which may result in the loss of a valuable license and offenses where a heavy enough fine is imposed so as to indicate criminality because such a fine could be taken as a gauge of the ethical and social judgments of the community.

(Footnotes omitted.) Our most recent synthesis of the test to be used in determining whether a proceeding is a criminal prosecution was expressed in *Resek v. State*, 706 P.2d 288, 291 (Alaska 1985), as follows:

criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation or suspension in such instances is not that one has committed a criminal offense, but that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of crime.

29  A heavy enough fine might also indicate criminality because it can be taken as a gauge of the ethical and social judgments of the community. *Id.*

■  Applying the *Baker* three-part test, strict liability commercial fishing offenses do not entail incarceration as a direct penalty. The loss of a valuable license will not result from a finding that such offenses have been committed. Thus, only the third part of the test is involved. Is there a connotation of criminal conduct which is carried by conviction of a strict liability commercial fishing offense, either based on the nature of the offense or the size of the fine?[8]

As to the nature of the offense, because strict liability offenses do not require a culpable mental state there is nothing inherent in a conviction which connotes traditional criminal conduct. *See Resek v. State,* 706 P.2d 288, 292 (Alaska 1985) (explaining that forfeiture action is not a criminal prosecution within meaning of article I, section 11 because the owner of forfeited property may not be criminally culpable). Moreover, in classifying and in defining "violations" within the criminal code, the legislature has classified "violations" as offenses "which characteristically involve conduct inappropriate to an orderly society but which do not denote criminality in their commission," AS 11.81.250(a)(6), and defined a "violation" as a "noncriminal offense [such that] conviction of a violation does not give rise to any disability

or legal disadvantage based on conviction of a crime," AS 11.81.900(b)(58).

With respect to the size of the fine, it is our view that a maximum fine of $3,000 for a first offender, or $6,000 for a repeat offender, does not in itself connote criminality in the context of the highly regulated multi-million dollar fishing industry. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 538 (Alaska 1980) (plurality opinion) (holding that $5,000 civil fine assessable for unfair or deceptive bill collection practice does not render proceedings criminal prosecutions, as those found guilty will not suffer severe collateral consequences such as curtailment of future economic opportunities or substantial social opprobrium).

To be considered along with the fine is the possibility that the fish, or the value of the fish, caught by a vessel while committing a fishing violation will be forfeited. As this case illustrates, sometimes the amount which may be forfeited is substantial. Does a substantial forfeiture connote criminality? *Resek* gives a negative answer. Subject to forfeiture in *Resek* were five automobiles, thirty-five ivory carvings, and $16,500 in jewelry and cash. *See* 706 P.2d at 290. We held that forfeiture of these items would not be "equivalent to the imposition of a fine so heavy that it indicates criminality." *Id.* at 291. We noted:

[T]he forfeiture law does not attempt to tailor the amount of loss suffered through a forfeiture to the degree of culpability—to fit the "punishment" to the crime. The forfeiture penalty may be high for some, and negligible or nonexistent for others

---

This court has defined "criminal prosecution," as that term is used in Article I, as including (1) offenses for which a direct penalty may be incarceration, (2) offenses which may result in the loss of a valuable license, and (3) offenses for which the fine imposed is heavy enough to indicate criminality, because such a fine could be taken as a gauge of the ethical and social judgments of the community.

8.  The function of the third part of the *Baker* test is to recognize that incarceration and revocation of licenses are not the only possible methods by which the legislature might punish criminal conduct. Home confinement, community work service, probation, and fines are examples of alter-

native methods of punishment. Therefore, the court must determine if, in the social and ethical judgment of the community, the offense connotes criminal conduct in the traditional sense of the term, despite the lack of punishment by incarceration or revocation of a license.

Under the *Baker* test, potential sanctions determine whether a case is a "criminal prosecution" within the meaning of article I, section 11. In order to assess potential sanctions, a conviction must be assumed. Notwithstanding Chief Justice Compton's dissent, we do not believe that the need to hypothesize a conviction in order to apply the *Baker* test violates the presumption of innocence.

who are as deserving or even more deserving of criminal punishment.

We recognize that application of the forfeiture laws can result in severe loss to a property owner, and that there clearly is a punitive component to the forfeiture laws. Nonetheless, the absence of a correlation between the culpability of the property owner and the size of the penalty indicates that the legislature had additional aims in mind.

*Id.* at 292 (footnotes omitted). We went on to discuss the remedial nonpunitive purposes of a forfeiture, including, relevant to this case, its deterrent effect and the need to deny profitability to law-breaking activity. *See id.*

Some of the property forfeited in *Resek* was property used in the commission of crimes, and some of the property represented the proceeds of criminal activity. Forfeitures of property used in the commission of crimes are more punitive in nature than proceeds forfeitures. A fisherman who must give up his catch is roughly in the position

that he was in before he began fishing illegally. A fisherman who must give up his catch and his vessel and gear is in a much worse position. Alaska Statute 16.05.722 permits only proceeds forfeitures. Its purpose is "to prevent violators from profiting in any way from their illegal catch." *McCann v. State,* 817 P.2d 484, 486 (Alaska App.1991). For this reason the absence of a connotation of criminality is clearer in this case than in *Resek.*

Moreover, the size of a proceeds forfeiture is dependent solely on the amount of the proceeds and does not reflect a judicial or legislative judgment as to the nature of the conduct of the defendant. Therefore, the fact that the amount of such a forfeiture may be substantial is not suggestive of criminality.

■ We thus conclude that strict liability commercial fishing violations are not criminal prosecutions under article I, section 11 of the Alaska Constitution and, therefore, no jury trial is required under that section.[9],[10]

9. The core of the disagreement between this opinion and the dissenting opinion of Chief Justice Compton can perhaps be illustrated by stating the position of this opinion syllogistically:

(1) "criminal prosecutions" within the meaning of article I, section 11 of the Alaska Constitution are cases

(a) where the possible sanction is incarceration;

(b) where the possible sanction is loss of a valuable license or;

(c) involving offenses which connote criminal conduct, for example, where a heavy fine is imposed.

(2) This case does not fall within categories (1)(a), (b) or (c). As to (c), strict liability fishing violations do not connote criminal conduct because there is no culpable state of mind, no heavy fine is imposed, and forfeitures do not connote criminality because, as in *Resek,* the amount forfeited is independent of the degree of culpability and forfeitures have legitimate remedial nonpunitive purposes.

(3) Therefore, this case is not a "criminal prosecution."

Chief Justice Compton's syllogism would include in (1)(c) offenses where "potentially massive forfeitures" may be imposed in addition to fines which are not themselves heavy enough to connote criminal conduct.

Our disagreement with ·Chief Justice Compton's dissent is essentially a reprise of the *Resek* debate. Forfeitures do not connote criminality when viewed alone. It follows that they do not

connote criminality when viewed in conjunction with modest fines.

10. Although respondents based their motion for a jury trial only on the Alaska Constitution, the superior court judge stated in his oral remarks that he was also basing his decision on the Constitution of the United States. The Sixth Amendment to the United States Constitution guarantees defendants the right to trial by jury in "all criminal prosecutions." By judicial interpretation this guarantee has been held not to apply to "petty offenses." Any crime in which incarceration of more than six months is a possibility is not a petty offense. *See Blanton v. City of N. Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). Where the maximum period of incarceration is less than six months, a defendant is entitled to a jury trial "only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* In *United States v. Nachtigal,* 507 U.S. 1, 5, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993), the Court held that a fine of $5,000 taken in conjunction with a maximum period of incarceration of six months did not render the offense in question a serious one as to an individual defendant. *See also Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975) (holding that $10,-000 fine imposed on a labor union does not trigger assumed jury trial right). Whether forfeitures can be considered as additional statutory

## IV. Article I, Section 16 of the Alaska Constitution Does Not Apply

Article I, section 16 of the Alaska Constitution preserves the right to jury trial to the same extent as it existed at common law "[i]n civil cases where the amount in controversy exceeds two hundred and fifty dollars." The strict liability commercial fishing violation statute provides for forfeitures and fines which exceed this monetary threshold. However, we conclude that prosecutions of violations are not "civil cases." Instead, they are minor criminal cases.

On rehearing, the State argues that article I, section 16 does not apply because proceedings to establish strict liability commercial fishing violations are not civil cases within the meaning of section 16. The State argues that such proceedings are quasi-criminal. The State contends that this category encompasses proceedings which are criminal in nature but in which the potential punishment does not rise to a level requiring a jury trial under the *Baker* three-part test. Such proceedings are not civil, the State argues, because they are enforced under the rules governing criminal cases.

In response, the respondents argue that a violation is necessarily either a criminal prosecution within the meaning of article I, section 11, or a civil case within the meaning of article I, section 16. They contend that these categories are comprehensive and that there is not a third category which is neither criminal nor civil. Respondents also contend that these are civil cases because the punitive aspects of AS 16.05.722 are similar to civil penalties. They cite *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), in which the Supreme Court of the United States recognized a right to a jury trial under the Seventh Amendment in a civil penalty case. Finally, the respondents note a number of cases from other jurisdictions using the term "quasi-criminal" in which courts have extended certain protections afforded criminal defendants, including the right to jury trial, to ostensibly civil proceedings.

In our view the State has the better of the argument. In *State v. Clayton*, 584 P.2d 1111 (Alaska 1978), the issue presented was whether criminal procedures were available for the enforcement of traffic infractions.[11] Judge Clayton had issued an order quashing all arrest warrants which had been issued to defendants who had failed to appear or to satisfy fines in traffic cases. Judge Clayton's reasoning was that since an infraction is not a criminal offense it was necessarily civil. He wrote: "Being non-criminal an infraction is thus civil in nature. It logically follows that the ordinary criminal procedures are unavailable for the enforcement of infractions." *Id.* at 1112.

We concluded that infractions were quasi-criminal and reversed, holding that "the criminal procedures of enforcement are applicable to traffic infraction cases."[12] *Id.* at

penalties under *Blanton* seems to be an unanswered question. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), held that an *in rem* forfeiture of real property which had been used in drug violations was punishment subject to the excessive fines clause of the Eighth Amendment. While forfeitures of property used in the commission of crime, as in *Austin*, may be regarded as additional statutory penalties under *Blanton*, we doubt that forfeitures of the proceeds of illegal conduct, as in this case, will be so regarded. The purpose of proceeds forfeitures is more remedial than punitive. Based on the foregoing, we conclude that the Sixth Amendment to the United States Constitution does not require a jury trial in these cases.

11. "Infractions" within the motor vehicle code are analogous to "violations" within the criminal code. An "infraction" is the least serious vehicular offense, "is not considered a criminal offense," and is punishable by fine but not by imprisonment. AS 28.40.050(d). Similarly, a "violation" is the least serious offense in the criminal code, AS 11.81.250(a)(6), is a noncriminal offense for which conviction "does not give rise to any disability or legal disadvantage based on conviction of a crime," and is punishable by a fine but not by imprisonment. AS 11.81.900(b)(58). Statutes defining both offenses expressly deny the right to jury trial and appointed counsel. *See* AS 28.40.050(d); AS 11.81.900(b)(58).

12. The legislature later codified *Clayton*. Alaska Statute 12.80.040 provides that, except for the right to a jury trial and appointed counsel, "all laws of the state relating to misdemeanors apply to violations and infractions, including the powers of police officers, the jurisdiction of courts, and the periods for commencing actions and for bringing a case to trial."

1115. In amplifying this conclusion we noted that the statute defining infractions

> makes no changes in the traditional mode of proceeding in criminal matters with the exception of its declaration that a person cited with an infraction does not have a right to trial by jury or to court-appointed counsel. The action is brought in the name of the state; it is commenced by the filing of a complaint by a law enforcement official; it is prosecuted by the district attorney. The exceptions appear to merely codify existing constitutional law [citing *Baker* ]. Moreover, notwithstanding the legislative labeling of a traffic infraction a non-criminal offense by AS 28.35.230, it retains many criminal terms: [noting the terms "convicted," "guilty," and "punishable by a fine not to exceed $300."].

> The legislature has created a class of quasi-criminal offenses which, while they *are not serious, are to be disposed of within the criminal justice system.* Such hybrid actions are not uncommon in the American legal system.

*Id.* at 1113–14 (emphasis added).

While *Clayton* did not involve the question whether those accused of traffic infractions were entitled to a civil jury under article I, section 16, and thus is not directly controlling, it is nonetheless significant. It highlights the fact that the procedures used in cases like the present are importantly different from the procedures used in civil cases. Criminal procedures related to adjudication, as distinct from enforcement, are more favorable to defendants than the procedures used in civil cases. For example, the State must prove its case beyond a reasonable doubt, rather than by a preponderance or clear and convincing evidence; under the criminal rules there must be an evidentiary hearing on the question of guilt, whereas the State could obtain a summary judgment in appropriate cases if the civil rules were used; a defendant's discovery obligations are more limited under the criminal rules than under the civil rules; and the State may not appeal when it loses. These advantages demonstrate that there is a substantial difference between cases conducted using criminal and civil procedures.

The respondents' point that there is no third category of cases which are neither criminal nor civil has force. They argue that if it were possible to create such a category, the jury trial rights encompassed in sections 11 and 16 of article I could be severely compromised. However, the answer to this contention is that there is no third category of cases. As used in *Clayton,* the term "quasi-criminal" encompasses minor offenses which are criminal rather than civil in nature but do not meet the *Baker* test for the right to jury trial.

The respondents' argument that the fine under AS 16.05.722 is similar to fines which may be contained in statutes providing for civil penalties is correct insofar as it focuses on the similarity of fines and civil penalties, both in their impact on defendants and their purposes. The primary distinction between a civil penalty and a section .722 fine, however, lies in the different procedures which must be employed before the respective sanctions may be imposed. A fine may be assessed only after the State successfully prosecutes a case under the applicable criminal procedures and rules, *see* AS 12.80.040; *State v. Clayton,* 584 P.2d 1111 (Alaska 1978), whereas a civil penalty follows a successful civil action, *see Tull v. United States,* 481 U.S. 412, 418–19, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). Given the different rights available to defendants under these different procedures, this is a distinction of substance.

Finally, the respondents correctly note that the term "quasi-criminal" has been used in a variety of contexts, oftentimes when courts bestow some protections afforded criminal defendants in civil proceedings. This court referred to forfeiture proceedings as "quasi-criminal" in holding that property owners have an immediate right to contest a vessel seizure. *See F/V Am. Eagle v. State,* 620 P.2d 657, 667 n. 25 (Alaska 1980). Other courts have referred to proceedings as "quasi-criminal" in granting a right to jury trial in paternity actions, *see B.J.Y. v. M.A.,* 617 So.2d 1061, 1063–64 (Fla.1993), and in applying the exclusionary rule to civil penalty proceedings under a drug tax act, *see Sims v. Collection Div. of the Utah State Tax Comm'n,* 841 P.2d 6, 14–15 (Utah 1992).

Given the many contexts in which the term "quasi-criminal" has been used, it is not surprising that it does not uniformly signal that each case so characterized must fall on the criminal rather than the civil side of the docket. That, however, is the effect of the term as used in *Clayton*. Respondents' argument that "quasi-criminal" has different meanings in different contexts does not cast doubt on what the term meant in *Clayton*.

*Clayton* recognized that, regardless of the legislative designation of such offenses as noncriminal, violations and infractions are minor criminal offenses in substance and are to be enforced and adjudicated using criminal procedures. Our opinion today adheres to the same principle. Violations are tried using criminal procedures. Such cases are substantively criminal prosecutions, albeit for minor offenses falling outside the scope of the jury trial right under article I, section 11 of the Alaska Constitution. Since violations are criminal rather than civil cases, article I, section 16 does not apply to them.

## V. *Conclusion*

For the reasons stated above, the order of the district court granting jury trials to the respondents is reversed and this case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

COMPTON, C.J., dissenting.

COMPTON, Chief Justice, dissenting.

This case seems to present the question whether a potential forfeiture worth hundreds of thousands of dollars makes a proceeding a "criminal prosecution," a "civil case," or a new, third type of case. The first two answers would entail a right to jury trial; the third would be a major development.

1. *See* Op. at 742–743.

2. *Id.* at 742.

3. *See id.* at 741–743 (quoting and applying test of *Baker v. City of Fairbanks,* 471 P.2d 386, 402 & n. 29 (Alaska 1970)).

4. *See id.* at 744–746.

But the court, after some definitional gymnastics, reaches an innovative alternate answer by extending a hitherto-dormant, twenty-year-old opinion. It concludes that the proceeding is neither a civil case, nor a criminal prosecution, nor a new, third type of case. Instead, it concludes, a forfeiture of hundreds of thousands of dollars' worth of fish is most closely analogous to a traffic ticket. Because I find this analogy unpersuasive, I dissent.

The court (1) isolates the statutory fine from the forfeiture;[1] (2) quickly dismisses the former, which is \$3,000–\$6,000, as basically *de minimis* "in the context of the highly regulated multi-million dollar fishing industry";[2] (3) concludes that the potential forfeiture does not make the proceeding a "criminal prosecution" because it is not a " 'heavy enough fine' " to " 'connot[e] criminality' ";[3] and (4) holds that this is not a "civil case," since defendants still have *other* criminal procedural protections.[4] I disagree with all four steps.

## I. *Criminal Proceeding Analysis*

A. *Neither Resek nor General Principles Adequately Support the Conclusion That the Potential Forfeiture Does Not Make the Proceeding at Issue a "Criminal Prosecution."*

We held in *Resek v. State* that a civil *in rem* proceeding to forfeit conveyances used in, and proceeds of, drug trafficking was not a "criminal prosecution" for constitutional purposes.[5] I dissented from that opinion and still think it incorrect.[6] But given that precedent, the first step in deciding whether this case involves a "criminal prosecution" is to compare it to *Resek*. The court argues that this proceeding is *less* of a "criminal prosecution" than that in *Resek*. If so, then even if

5. 706 P.2d 288, 293 (Alaska 1985). *Resek* concerned the right to counsel, but we saw "no justifiable reason for defining 'criminal prosecution' any differently" for purposes of the rights to counsel and to a jury. *Id.* at 291 (citing *Alexander v. City of Anchorage,* 490 P.2d 910, 913 (Alaska 1971)).

6. *See Resek,* 706 P.2d at 294–96 (Compton, J., dissenting).

*Resek was* wrongly decided, the court may be right in this case. I believe, however, that this case involves *more* of a "criminal prosecution" than *Resek,* and that we can distinguish that case and should find a right to jury trial.

1. *The fact that the proceeding at issue may yield a proceeds forfeiture does not make it less of a "criminal prosecution" than that in Resek.*

The question that we must answer is *who* must decide whether a fisher charged with violating AS 16.05.722 in fact did so—a judge or a jury. The court's key point is that the potential forfeiture in this proceeding makes it less like a criminal prosecution than that in *Resek,* which partly involved a forfeiture of property used in committing crime, because the fish are but "proceeds of criminal activity." [7] Their forfeiture is less "punitive in nature" than a forfeiture of property used to commit a crime. [8] It serves only " 'to prevent violators from profiting in any way from their illegal catch,' " and leaves them "roughly in the position [they were] in before [they] began fishing illegally." [9]

The plainest problem with this reasoning is that, unless we have dispensed with the presumption of innocence, it is circular. Taking away an "illegal catch"—i.e., "the proceeds of criminal activity"—from "violators" who have been "fishing illegally" is of course not punitive, but restitutionary; its point is less to punish or deter than to prevent unjust enrichment. [10] I can accept that part of the court's analysis. What I cannot accept is the implicit assumption that the legislature, in denying the right to a jury trial for fishing violations prosecuted under AS 16.05.722, also tacitly dispensed with the presumption of innocence in such cases, and the court's willingness to embrace that notion.

If we must presume innocence in the brave new world of "quasi-criminal," strict-liability offenses with six-figure sanctions, then the court's reasoning is circular. In order for a

forfeiture to be restitutionary, it must be true that the fisher caught the fish illegally. But that is precisely the question that either a judge or jury must answer. To begin by presuming that the answer is "guilty," and *then* decide who should ask the question, is rather to rig the inquiry. This, essentially, is the court's analysis: Given our assumption that you are guilty, the fish that we intend to take from you are just fish that you caught illegally, so taking them away is not punitive. Since taking them away from you is not punitive, you have no right to have a jury decide if you are guilty of illegally catching them.

Another problem is the court's uncritical acceptance of *McCann* 's declaration that forfeiture leaves fishers in "roughly" the position they were in before a violation. This is patently wrong, as we learned in *Millman v. State.* [11] A fisher is not permitted to offset operating costs from the value of the fish taken. Thus a fisher who spends thousands of dollars in operating costs preparatory to an opening and catches $100,000 worth of fish, which are then forfeited because of a strict liability violation, is not left in "roughly" the position he or she occupied before the forfeiture. Not only has the fisher not "profited," the fisher has lost the thousands of dollars in operating costs. This is *in addition to* the fine and the value of the forfeiture.

The court's assessment of the potential sanction necessarily presumes that each person charged under AS 16.05.722 is in fact guilty. But if we presume that a fisher is innocent until proven guilty, then the fish are presumptively the fisher's lawful property until such proof. They are analytically indistinct from other property whose deprivation—to the tune of $158,000 or more—would be a heavy enough fine to connote criminality.

If the State wants a court to treat the fish as if they were illegally caught, it must do

---

**7.** Op. at 743.

**8.** *Id.*

**9.** *Id.* at 743 (quoting *McCann v. State,* 817 P.2d 484, 486 (Alaska 1991)).

**10.** *See, e.g.,* 1 Dan B. Dobbs, *Law of Remedies* § 1.1, at 5 (2d ed.1993).

**11.** 841 P.2d 190 (Alaska App.1992).

one of two things. It can employ a criminal proceeding and offer evidence to overcome, *in each case,* the presumption of innocence. Or it can seek a forfeiture in a civil *in rem* proceeding, in which there is no presumption of innocence, but in which the defendant would have a right to jury trial when the value of the fish exceeds $250.

The court's explanation of why "the absence of a connotation of criminality is clearer in this case than in *Resek* "[12] is thus logically unsound. The question then becomes whether this proceeding is *more* like a criminal prosecution than that in *Resek.*

### 2. The proceeding at issue is more of a "criminal prosecution" than that in Resek.

*Resek* held that a civil *in rem* forfeiture of conveyances used and profits made in drug trafficking was not a "criminal prosecution."[13] But that case fundamentally differs from this one; the proceeding was expressly "civil." The alternative to finding a *de facto* "criminal prosecution"—i.e., agreeing with the legislature that the case was "civil"—was undisputed, and did not entail denying a constitutional claim to a trial by jury. The forfeiture statute at issue denied jury trials,[14] and Resek apparently did not challenge that denial. In this case, the court obviously recognizes that, as we held before rehearing, a jury trial must be available here if this qualifies as a "civil case" under article I, section 16 of our Constitution.

*Resek* stressed that the "issue is really one of legislative intent" and found that "the nature of the forfeiture penalty clearly indicates that it was intended as a civil, not a criminal, sanction."[15] We noted that "[f]ederal courts interpreting the forfeiture law ... [that was] the model for Alaska's statute[ ] have also concluded that such an action

is not so punitive in either purpose or effect as to negate the Congressional preference for the civil label."[16] In this case, of course, there is no "[legislative] preference for the civil label" to honor—if there were, Dutch Harbor and Trident would be all too happy to have us honor it.

Beyond deference to legislative intent, which is not relevant here, *Resek* advanced two reasons not to find *in rem* forfeiture so punitive in fact as to belie its "civil" label. They were the breadth of the conduct sanctioned, and the legislature's failure to tailor the sanction to the degree of culpability.[17]

Under the statute in *Resek,* an owner could forfeit her property without being "criminally culpable for the illegal use to which [it is] put," by "merely facilitat[ing] the crime, however passively, as long as [she] had reason to know of its commission."[18] An accomplice must intentionally encourage or assist the crime.[19] *Resek* indicates that, if one may suffer a penalty without having the *mens rea* required for criminal liability, then, all other things being equal, a proceeding to impose the penalty is *not* a criminal prosecution.

This factor *seems* to support the State here. Dutch Harbor and Trident may be even less "criminally culpable," in terms of the traditional intent element, than *Resek* 's hypothetical property-owner: AS 16.05.722 imposes strict liability. But because fishing is a heavily regulated industry, this factor *actually* supports Dutch Harbor and Trident. This court said in *State v. Hazelwood* that it will countenance strict-liability crimes in "heavily regulated industries," for *"malum in se* offense[s]," and for violations of "regulations which call for only a modest fine."[20] Dutch Harbor and Trident do not raise the issue, but the reason that AS 16.05.722 is constitutional despite its lack of a *mens rea*

12. Op. at 743.

13. *See Resek,* 706 P.2d at 291–93.

14. *See id.* at 290 (citing AS 17.30.116(b)).

15. *Id.* at 291–92.

16. *Id.* at 292 (citing 21 U.S.C. § 881 (1981) and various cases including *United States v. One As-*

*sortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)).

17. *See id.*

18. *Id.*

19. *See id.*

20. 946 P.2d 875, 883–84 (Alaska 1997)

requirement must be that fishing is a heavily regulated industry.

This case is thus unlike *Resek*'s hypothetical, in which the property-owner did not have the relevant *mens rea* for criminal liability. That suggested that the forfeiture she faced was *not* a "criminal prosecution." Here the fish-owners *do* have the *mens rea* needed for criminal liability, so there is no reason to think that the forfeitures they face do *not* make this a "criminal prosecution."

*Resek*'s second factor was that "the forfeiture law [did] not attempt to tailor the amount of loss suffered . . . to the degree of culpability—to fit the 'punishment' to the crime." [21] The court's comment on tailoring contradicts its comment on punishment. On the latter, it says that a proceeds forfeiture is less punitive than an instrumentality forfeiture, because it leaves a fisher "roughly in the position he was in before he began fishing illegally." [22] But then it says, as to tailoring, that "the size of a proceeds forfeiture is dependent solely on the amount of the proceeds and does not reflect a judicial or legislative judgment as to the nature of the [defendant's] conduct." [23] In fact, a proceeds forfeiture is, unlike an instrumentality forfeiture, inherently tailored to fit the crime, as the court's initial comment about the fisher's "position" shows. We can recast its correct-but-unhelpful comment that "the size of a proceeds forfeiture is dependent solely on the amount of the proceeds" as follows: the size of a proceeds forfeiture depends solely on the extent of the crime. A proceeds forfeiture precisely undoes the crime; a more closely tailored sanction is hard to imagine.

Of *Resek*'s three reasons for finding no "criminal prosecution," the dominant one, deferring to a "civil" label, is irrelevant to this case, and the subsidiary reasons of *mens rea*

and tailoring both suggest that this *is* a "criminal prosecution."

Looking past *Resek*, I note the vital factor of history. Unlike ownership of lawful property that happens to be used in a drug crime, illegal fishing has long been a crime subject to "criminal prosecution." By focusing only on the severity of the sanction, the court ignores what *Baker* is really about. In later opinions glossing *Baker*'s holding, we have foregrounded that opinion's comment about "a heavy enough fine." [24] But that comment was in fact a *footnote*. [25] It elucidated our real concern in holding that the Warren Court had not expanded the right to jury trial far enough; [26] we meant to define "criminal prosecutions" expansively. We did not erect a "heavy enough fine" rule as a demanding threshold to bar further expansion of a narrow right to jury trial; we made it one example of several principled lines along which we meant to expand the right beyond its historic and contemporary federal scope. We appended the "heavy enough fine" footnote to our holding that "the category of 'criminal' prosecutions . . . must also include offenses which, even if incarceration is not a possible punishment, still connote criminal conduct in the traditional sense." [27] It is hard to imagine what more obviously and centrally "connote[s] criminal conduct in the traditional sense of the term" than conduct that has traditionally been a crime.

*Baker* extensively discussed the role of history in defining the right to jury trial. [28] Its thrust was to reject the argument, accepted by the United States Supreme Court, that the common-law history of "petty" offenses triable without jury defines an implied exception to the jury-trial guarantees in the federal and Alaskan Constitutions. [29] We noted that the United States Supreme Court

21. *Resek*, 706 P.2d at 292.

22. Op. at 743.

23. Op. at 743.

24. *See Alexander v. City of Anchorage*, 490 P.2d 910, 912–13 (Alaska 1971); *Resek*, 706 P.2d at 291 (both quoted in Op. at 741 n.7).

25. *See Baker*, 471 P.2d at 402 n. 29.

26. *See id.* at 401–02.

27. *Id.* at 402.

28. *See id.* at 391–93, 396.

29. *See id.* at 391 (citing *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) and older opinions).

has "only rarely and for rather trifling offenses" denied the right to jury trial.[30] We nonetheless found history an incoherent and inadequately generous guide.[31] The "argument from expediency" that justified past denials of the right to jury trial may have been valid "when the abilities of government were limited to the needs and financial capabilities of an agrarian or early industrial society," [32] but "what was practical historically is not necessarily adequate to the needs of our times." [33] We held that "fundamental fairness ... requires an extension of procedural safeguards ... to an area of crimes once deemed outside the pale of protection." [34]

Read as a whole, *Baker* plainly did *not* set out a strict three-factor test that defendants so bold as to seek a jury trial must satisfy in the face of a presumption that we construe the right narrowly. By treating *Baker* as only a three-factor test, the court turns the opinion on its head, converting three examples of our desire to expand the right to jury trial into three walls to cabin it. The court's failure to mention history illustrates this consequence of ignoring most of *Baker*. That opinion carefully rejected the idea that we should *limit* the category of "criminal prosecutions" to those historically deemed "serious offenses." It is amazing that, in applying *Baker*, we could countenance the reclassification of what has historically *been* a crime subject to "criminal prosecution" into a "quasi-criminal" offense without even noting that history favors a right to a jury.

In *Brown v. Multnomah County District Court*, the Oregon Supreme Court consid- ered a legislative attempt to reclassify as a civil "traffic infraction" a first offense of driving under the influence.[35] It conceded that "[n]othing prevents such a decriminalization of traffic offenses, if it is fully carried out," [36] and noted the question of "whether the downgrading marks a genuine change in the public assessment of the conduct or merely seeks procedural short-cuts." [37] Its bottom line was that "the code's offense ... and its enforcement and punishment, retain too many penal characteristics not to be a 'criminal prosecution.' " [38]

The court here does not approach the decriminalization in this case holistically; it analyzes the penalty in isolation. It notes that defendants benefit from the criminal adjudicatory procedures retained by the legislature,[39] but not that they still face burdensome criminal enforcement procedures. The legislature has significantly reduced the penalties for the new "quasi-criminalized" version of commercial-fishing offenses, though it must be noted that the fines escalate for repeat offenses. This is in tension with the idea of strict liability. Imposing a fixed fine without fault may reflect a desire not to punish a specific past failure of care, but to generally increase prospective awareness and caution.[40] It seems difficult, however, to explain escalating fines for identical conduct other than by presuming a desire to punish the separate antisocial element of recalcitrance. I think that the retention of criminal enforcement proceedings, the substantial fines, their escalation for repeat offenders, and most importantly the potentially massive

---

**30.** *Id.* at 392; *and see id.* at 392–93 (summarizing cases).

**31.** *See id.* at 391 ("[O]ne looking only to the past will find a jumble of offenses with no coherent, rationalizing principle by which to determine the line between what is a petty and a serious crime.").

**32.** *Id.* at 394.

**33.** *Id.* at 396.

**34.** *Id.* at 401.

**35.** *See* 280 Or. 95, 570 P.2d 52, 54 (Or.1977).

**36.** *Id.* at 61.

**37.** *Id.* at 57.

**38.** *Id.* at 60.

**39.** *See* Op. at 745.

**40.** *See Hazelwood*, 946 P.2d at 883–84. The court noted that some coercion is designed to "cause[] the offender to pay attention." *Id.* at 883. Hopefully, that is, the threat of strict-liability sanctions will prompt potential offenders " 'to exert [their] faculties, rather than ... enter[ing] as a reason for conforming to the law when [they are] deliberating whether to break it or not. It is perhaps more like a goad than a guide.' " *Id.* (quoting H.L.A. Hart, *Punishment and Responsibility* 134 (1968)).

forfeitures, jointly mean that the legislature did not fully carry out a decriminalization of commercial-fishing offenses. This is particularly so given that such offenses started out "criminal," while the traffic offenses that dominate contemporary case law on "quasi-criminal" offenses and procedural rights did not.[41] The practical needs, stakes, and public attitudes involved in traffic regulation do not provide useful analogies for so disparate a context as commercial fishing. Our apt finding of a valid "quasi-criminalization" in *Clayton* does not support such a conclusion here.

**B.** *The Potential Fine at Issue Here Is Very Significant, but Need Not by Itself Suffice to Mark This Proceeding a Criminal Prosecution.*

The court dispenses in one sentence with the $3,000–$6,000 fines that AS 16.05.722 (at the time of this proceeding) authorized as punishment for the "quasi-criminal" violations it defines.[42] (The statute now authorizes fines of $3,000–$9,000.[43]) The court says that a maximum fine of such size "does not in itself connote criminality in the context of the highly regulated multi-million dollar fishing industry."[44]

There are two problems with this analysis. The first is that AS 16.05.722 is not limited, as the court seems to suggest, to multi-million-dollar fishing corporations. Alaska's fishing industry as a whole is indeed a "highly regulated, multi-million dollar" affair. But AS 16.05.722 applies not to an industry, but to individual fishers. Some may be large corporations, like the defendants in this case. A $3,000–$6,000 fine may well be a minor

cost of doing business to such defendants. But other defendants will be sole proprietors or partnerships—individual boat-owners fishing on their own, non-multi-million-dollar accounts. An assurance that a $3,000–$6,000 fine is minor in relation to the industry as a whole will be cold comfort to individual fishers fined several thousand dollars in cases in which, after all, the State does not even prove them negligent. Such fishers have a right to "the infusion of the earthy common sense of a jury," which may, as several federal courts have noted, "upon occasion mitigate appropriately the harsh impact sometimes characteristic of *in rem* procedure"[45] (or here, of strict-liability, "quasi-criminal" procedure).

While this appeal was pending, First Judicial District Court Judge Patricia Collins, in a long, thoughtful opinion, held that, while a proceeding under AS 16.05.722 is not a criminal prosecution or a civil case, due process nonetheless entails a right to jury trial if the State seeks to impose a fine of more than $250.[46] Judge Collins noted that "strict[-]liability prosecutions are not limited to multi-million dollar catcher-processor operations (like Trident). To the many small-scale commercial fishers barely subsisting in a depressed fisheries market [whom] this court sees on a daily basis, a $3,000 to $9,000 fine is significant."[47] This practical focus led Judge Collins to hold that fines "ten to ninety times the amounts involved in *Clayton* [$300] and *Alaska Public Defender Agency* [$100] strain the notion [that] such offenses can be properly deemed so 'minor' that *no* jury trial right, either criminal or civil, applies."[48] The court does not fully discuss this issue.

**41.** *See, e.g., State v. Clayton*, 584 P.2d 1111, 1114 & nn.9–10 (Alaska 1978) (collecting cases); *Brown*, 570 P.2d at 54; *State v. Richey*, 158 Ariz. 298, 762 P.2d 585, 588 (Ariz.App.1988), *aff'd in part, vacated in part by* 160 Ariz. 564, 774 P.2d 1354 (Ariz.1989); *State v. Bennion*, 112 Idaho 32, 730 P.2d 952, 955 (Idaho 1986); *State v. Anton*, 463 A.2d 703, 708–09 (Me.1983).

**42.** *See* Op. at 742.

**43.** *See* AS 16.05.722(a)(1)-(3) (*as amended by* ch. 47, § 1, SLA 1995).

**44.** Op. at 742.

**45.** *United States v. One 1976 Mercedes Benz 280S*, 618 F.2d 453, 469 (7th Cir.1980) (*quoted in, e.g., United States v. Chandler*, 36 F.3d 358, 369 (4th Cir.1994) (Wilkinson, J., concurring) and *United States v. RR # 1, Box 224*, 14 F.3d 864, 876 (3d Cir.1994)). In fishing communities, jury common sense may be more "salty" than "earthy," but the point remains apt.

**46.** *See State v. Jurries*, No. 1CR–97–534 Cr. (Alaska Dist.Ct., March 6, 1998), at 3–5.

**47.** *Id.* at 22.

**48.** *Id.* (citing *Clayton*, 584 P.2d at 1115, and *Alaska Pub. Defender Agency v. Superior Court*, 584 P.2d 1106, 1110 (Alaska 1978)).

The second problem in the court's analysis is its comment that the potential fine "does not *in itself* connote criminality" (emphasis added). The question under *Baker* should not be whether one of two potentially concurrent penalties "in itself" connotes criminality, but whether the nature of the offense and of the possible consequences *as a whole* do so.[49] The court, though, isolates the fine from the forfeiture and from the other aspects of the offense. It analyzes the parts one by one, in short, and concludes that none satisfies a test that should address the whole. But as I argued in Part A.2 above, discussing the Oregon Supreme Court's *Brown* opinion, we must consider the totality of the proceeding and penalties at issue here.

## II. Civil Proceeding Analysis

A. *If This Is Not a "Criminal Prosecution," Then It Is a "Civil Case," for Creating an Expansive New Category of "Quasi–Criminal Cases" Implicitly Overrules Baker and Is Poor Policy.*

In *Resek* we declined to reject the legislature's "civil" label and recognize the "criminal" substance of a forfeiture proceeding. In this case, by contrast, the legislature has not chosen either of the two traditional ways to enforce legal claims—the civil suit or the criminal prosecution. Respondents thus do not ask us to override such a choice. They instead ask us to override AS 16.05.722's novel, hybrid approach of using neither a "criminal prosecution," with its right to jury trial, nor a "civil case," with its right to jury trial, but instead using a "quasi-criminal" case that conspires to prevent defendants from enjoying the right to have a jury stand between them and the prosecution.

The court holds that a "quasi-criminal" proceeding is not a new, third type of case, but a minor criminal case properly exempted from the right to jury trial.[50] I think its

claim that we have not created a third category of cases disingenuous. Policy reasons beyond a preference for neat dichotomies require us generally to hold the legislature to the long and wisely established choice of using either civil or criminal proceedings to impose substantial sanctions.

The court's analysis of *why* this is not a civil case is hard to grasp. It notes the State's amazingly circular argument that "quasi-criminal" proceedings "are not civil ... because they are enforced under the rules governing criminal cases."[51] It then recounts our conclusion in *Clayton* that proceedings to impose fines of up to $300 for traffic infractions are "quasi-criminal" and may involve criminal enforcement mechanisms and yet no jury trial.[52]

The court treats *Clayton* as having created a hithertounnoticed, but expandable, subclass of criminal cases. In so doing, it ignores the fact that *Baker*, in broadly defining "criminal prosecutions," explicitly excepted "such relatively innocuous offenses as wrongful parking of motor vehicles, minor traffic violations, and [regulatory violations]."[53] Traffic tickets were the genre that the *Baker* court had in mind in noting that "some infractions of laws or ordinances ... are so slight that probably all reasonable persons would agree that they should not be triable by jury."[54] It is more plausible to see *Clayton*—though it did not involve the right to jury trial—as having followed *Baker*'s lead and recognized traffic regulation as a *sui generis* legal incident of modern life that all reasonable people can agree does not warrant full-blown civil *or* criminal procedural protections.

In any case, the court establishes that we have *one* precedent of "quasi-criminal," nonjury enforcement proceedings. Having done so, the court should then show that *this* proceeding is more analogous to that prece-

---

49. *See Baker*, 471 P.2d at 402 & n. 29; *see also id.* at 389–90, 393–94 (noting choice between maximum-possible-punishment-only and totality-of-the-offense approaches to determining whether crime is "petty" or "serious," and preferring latter, although ultimately rejecting petty/serious distinction entirely).

50. *See* Op. at 744, 745–746.

51. *Id.* at 744.

52. *See id.* at 744–745.

53. *Baker*, 471 P.2d at 402.

54. *Id.* at 394.

dent than to the norm of "civil cases." It does not even try to do so. It says that *Clayton* "highlights the fact" that criminal and civil procedures "are importantly different."[55] It notes that criminal adjudicatory procedures "are more favorable to defendants than [civil] procedures,"[56] so that "quasi-criminal" defendants, while denied a jury trial, have some advantages over civil defendants, i.e., the standard of proof, unavailability of summary judgment, limited discovery duties, and safety from appeal. But after listing these differences, the court notes only that it has "demonstrate[d] ... a substantial difference between cases conducted using criminal and civil procedures."[57]

I am at a loss to understand how this advances the argument that *this* proceeding should be considered not a "civil case," but part of a class, with *Clayton*, of minor, nonjury "quasi-criminal" cases. The court's point seems to be that, if we declare a case "quasi-criminal," the effect is not merely to deny the defendant a right to jury trial, but also to give the defendant other procedural advantages. Of course, the fact that Dutch Harbor and Trident nonetheless urge us to declare this a "civil case" suggests that those advantages are less valuable. I cannot see how those advantages suggest that we should not *also* afford defendants a right to jury trial. I do not know how to address an argument that, because we give defendants some of the protections to which they are entitled, we need not give them the rest. And while I agree that a "quasi-criminal" case is procedurally much like a criminal prosecution, and is not just a civil case with the jury-trial right deleted, the court still says nothing as to why we should so categorize *this* proceeding, despite the heavy penalty at stake.

I think that the "quasi-criminal" proceeding in *Clayton* is, at least for traffic infractions, useful and constitutional. But we should not deny that it is a third "category" of cases. The right to a jury trial is not so

minor a variable that it cannot change a proceeding's basic character. This appeal, where that right is all that is at stake, would not be part of a centuries-old line of cases if that were so. In *Baker*, we quoted Justice White's opinion in *Duncan v. Louisiana.*[58] Although *Duncan* recognized a petty-offenses exception to the Sixth Amendment, it nonetheless stressed the jury's universal centrality in American States' systems of justice:

> [E]very American State ... uses the jury extensively, and imposes very serious punishments only after a trial at which the defendant has a right to a jury's verdict. In every State ... the structure and style of the criminal process—the supporting framework and the subsidiary procedures—are of the sort that naturally complement jury trial, and have developed in connection with and in reliance upon jury trial.[59]

In *Baker* we sought to apply that lesson. We implicitly left open the possibility that the legislature may try to impose a given sanction via the equally well-defined procedures of a civil case. Our three-part test for what is a "criminal prosecution" defines instances in which, although the legislature labels a proceeding "civil," we will find that the penalties are so severe, or so connote condemnation or stigma, that we will reject the attempt to enforce them in civil cases. The test, in short, shows when to override a civil label and treat a case as criminal. It does not constitute a second, higher threshold, *after* we have determined that a case is "criminal," for determining *further* that it warrants a jury trial. The jury is presumptively central to the criminal procedural enterprise and, under *Baker*, that presumption is not rebuttable. The court's listing of other protections that remain after it has taken away the right to a jury cannot refute that point.

The court acknowledges the "force" in respondents' argument that having a third cat-

**55.** Op. at 745.

**56.** *Id.* at 745.

**57.** *Id.* at 745.

**58.** 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

**59.** *Id.* at 150 n. 14, 88 S.Ct. 1444 (*quoted in Baker*, 471 P.2d at 389).

egory of cases could "severely compromise[ ]" the rights "encompassed in sections 11 and 16 of article I."[60] I agree. The court responds that "there is no third category of cases" because, "[a]s used in *Clayton*, the term 'quasicriminal' encompasses minor offenses which are criminal rather than civil in nature but do not meet the *Baker* test for the right to jury trial."[61] I disagree. *Clayton does* create a third "category" of cases. That category has, in twenty years, included only *Clayton* and the companion case of *Alaska Public Defender Agency v. Superior Court*,[62] which involved a proceeding to enforce a $100 fine under a municipal harassment ordinance.

I think that there is a much simpler answer to respondents' claim that "creating" such a third category could "compromise" the constitutional rights to jury trial. We should acknowledge that we have created that category; note its utility, as *Baker* foresaw, for traffic tickets; and then *not expand it.* The court instead treats a case involving vastly heavier potential penalties than *Clayton* or *Alaska Public Defender* in a way different than a civil suit, and different than a criminal prosecution, and yet denies the substance of what it is doing; that is the real danger. An exception acknowledged and forthrightly defined by reference to policy and practical reality can be contained; an exception defined by definitional legerdemain is dangerous, and can expand without accountability. The court's opinion does not even try to analogize this case to *Clayton* in light of policy or practical reality, as opposed to abstract categories.

Beyond these policy concerns, the court's argument has another fatal flaw. It implicitly overrules the heart of *Baker*: *All* "criminal prosecutions" entail a right to jury, and we expressly reject the distinction between "serious" and "petty" offenses.[63]  *Baker*

could not have been clearer on this point. Yet the court says that AS 16.05.722 defines "minor offenses which are criminal rather than civil in nature but do not meet the *Baker* test for the right to jury trial."[64]  To refer to "minor" rather than "petty" offenses in order to argue that we remain within the "criminal" category yet without the rule of *Baker* is unedifying, to say the least. And having acknowledged that the case is within the "criminal" category, how can we say that a successful prosecution does not denote criminality?

The real question is not how to metaphysically define categories of cases. It is whether sound policy and a fair reading of the Constitution and precedent suggest that we should expand, for the first time in twenty years, the exception to *Baker* that we suggested for traffic tickets in *Clayton*. To do so, the court must analogize a proceeding to enforce traffic tickets to a proceeding that until recently was a criminal prosecution, and that can produce fines of up to $6,000 and forfeitures worth hundreds of thousands of dollars. I cannot see the analogy.

### III. *Forecast*

#### A. *The Court's Opinion, in Conjunction with Hazelwood, Vastly Expands the State's Power to Forfeit Property.*

Looking beyond this case, I find most disturbing the conjunction of today's curtailment of *Baker* with last year's approval, in *State v. Hazelwood*,[65] of criminal punishment based on simple negligence. *Hazelwood* and today's opinion jointly free the State from the burdensome restraints of criminal procedural rights, while leaving it free to use criminal enforcement mechanisms, if it only lowers the *mens rea* requirement for, and "quasi-criminalizes," an offense. It can then use criminal law tools to control behavior and

---

**60.** Op. at 746.

**61.** *Id.*

**62.** 584 P.2d 1106 (Alaska 1978).

**63.** *See Baker,* 471 P.2d at 394 (noting that "courts have had difficulty in determining the qualitative difference by which an offense is to be

placed in the category of serious or petty" and that "the most critical question is not where the line should be drawn, but why it should be drawn at all"); *id.* at 401–02 (concluding that it should not).

**64.** Op. at 745.

**65.** 946 P.2d 875, 884–85 (Alaska 1997).

raise revenue by convincing judges to forfeit citizens' property, of potentially unlimited value, with a showing only of simple negligence, or even strict liability, and without having to face the expense, delay, and moderating influence of a jury. The consequences are impressive.

In any area of law enforcement in which the legislature wishes to aid prosecutors, and perhaps raise revenues, it can create parallel "quasi-criminal" violations for existing crimes. This shifts from defendants to prosecutors the decision whether a case will be tried to a jury. Perhaps more importantly, it tremendously shifts settlement bargaining power to prosecutors. With no jury to stand between the prosecutor and the defendant, and with the leverage prosecutors should gain by the increased bargaining power inherent in prosecuting "quasi-criminal" cases, justice surely will not be delayed. It will only be denied.

### IV. *Conclusion*

The court gives itself away at the outset of its opinion when it says that strict liability commercial fishing violations "are minor offenses which do not fall within established standards for determining whether a criminal jury trial is required. Cases prosecuting such violations are nonetheless criminal rather than civil in nature; therefore a civil jury trial is not required." [66] I doubt that it will be of much comfort to the defendant found "guilty" by a judge of his or her third "strict liability commercial fishing violation[ ]," and upon that "conviction" fined $9,000 and unburdened of tens to hundreds of thousands of dollars worth of fish caught in the commission of the violation, to be able to say "I am not a criminal. I know this to be true because I did not have the right to be tried by a jury. I am only a 'quasi-criminal'." A "quasi-criminal" by any other name is a criminal.

Will the citizen on the street begin to understand the difference between a "criminal" and a "quasi-criminal"? Will the guilt associated with the conviction of such a violation, heretofore a crime, not be a "gauge of the ethical and social judgments of the com-

munity"? Are we prepared to proclaim, without fear of looking foolish, that such a violation is a "relatively innocuous offense[ ] [such as] wrongful parking of motor vehicles, minor traffic violations, and violations which relate to the regulation of property, sanitation, building codes, fire codes, and other legal measures which can be regulatory rather than criminal in their thrust"? If so, we must be prepared to approve denial of a jury in a proceeding seeking the forfeiture of a $10,000–$100,000 automobile for a $10 parking ticket or for a driver's failure to activate a turn signal.

The court declines to address the circularity of its analysis: the fish you have forfeited were taken as a result of your illegal activity; thus forfeiting them is not punitive. Since the forfeiture of illegally taken fish is not punitive, we need not afford you the right to a jury to determine whether you took the fish illegally. Its parsing of *Baker* undermines the principles which *Baker* eloquently articulated. And its failure to recognize that it is sanctioning a new category of cases will result in undermining the constitutional guarantees to trial by jury that heretofore had been presumed to have substance.