NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ROY F. SILAS,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　　Appellee. | Court of Appeals No. A-11452<br>Trial Court No. 3AN-99-1814 CR<br><br>O P I N I O N<br><br>No. 2602 — June 1, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: J. Adam Bartlett, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. Timothy W. Terrell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER.

As a condition of his probation, Roy F. Silas was ordered to participate in sex offender treatment as directed by his probation officer, and to "not ... discontinue treatment" unless he had his probation officer's approval. After Silas had participated in a sex offender treatment program for over a year, the program director terminated him from the program for various reasons (reasons that we will examine in this opinion).

Based on Silas's termination from the treatment program, the State petitioned the superior court to revoke his probation, alleging that Silas had violated his probation by discontinuing his treatment without permission.

Silas's attorney argued that Silas had not "discontinued" treatment, but rather that Silas had been involuntarily discharged from the treatment program without good reason.

The superior court ruled that it did not matter why Silas was terminated from the treatment program. The court interpreted Silas's condition of probation as requiring Silas to continue treatment until his probation officer said otherwise, and that Silas was in "technical violation" of his probation because he had been discharged from the treatment program — regardless of whether there was good cause for Silas's discharge.

We conclude that the superior court's ruling was error. If it was true that Silas was discharged from the treatment program for no good reason (or for improper reasons), then Silas's discharge from treatment would not establish good cause for the court to revoke Silas's probation.

As we recently explained in *Pulusila v. State*, __ P.3d __, 2018 WL 2272568 (Alaska App. 2018), our law forbids a sentencing court from revoking a defendant's probation unless the court finds that the facts surrounding the defendant's violation of probation constitute "good cause" to revoke probation. *Pulusila*, 2018 WL 2272568 at *2, 3, 6. In this context, "good cause" means a finding that "the corrective aims of probation cannot be achieved", and that "continuation of [the defendant's] probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation." *Id.* at *3, quoting *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973).

In Silas's case, the superior court never reached the factual merits of the defense attorney's contention that Silas was terminated from treatment without good reason. Thus, Silas's case still presents disputed issues of fact that the superior court must address and resolve — and we remand Silas's case to the superior court for that purpose.

Silas's case also presents other issues related to his conditions of probation.

At the probation revocation hearing, the superior court rejected Silas's request that he be allowed to socialize with Patsy Schreiber, his romantic partner and the mother of his children. Because the superior court failed to offer any plausible basis for this restriction on Silas's family relationship, we reverse the superior court's ruling on this matter.

Additionally, after the superior court revoked Silas's probation, the court added several new probation conditions. The court ordered Silas to enroll in domestic violence treatment, even though his case apparently presents no issue of violence. The court also ordered that, if a medical professional deemed it appropriate, Silas would be required to enroll in a residential treatment program. By adding the possibility of forced participation in residential treatment, the superior court illegally increased Silas's sentence. *See Christensen v. State*, 844 P.2d 557, 559 (Alaska App. 1993). We therefore direct the superior court to rescind these conditions.

*Underlying facts*

In 1999, Roy F. Silas was convicted of second-degree sexual abuse of a minor. He was sentenced to a term of active imprisonment, followed by probation for 10 years (with a 5-year suspended term of imprisonment). One of Silas's conditions of probation required him to participate in sex offender treatment as directed by his

probation officer, and not to discontinue treatment without his probation officer's approval.

After Silas was released on probation, his probation officer directed him to participate in sex offender treatment. In January 2011, Silas entered the sex offender treatment program run by the Center for Psychosocial Development. He participated in this program for more than a year, until May 2012, when he was arrested for stealing a laptop computer.

Several weeks later, Silas was released from custody in connection with the theft of the laptop, and he re-entered the sex offender treatment program. But after a period of time, the director of the treatment program, Julie Holden, terminated Silas from the program. According to the discharge summary prepared by Holden, Silas was terminated from the program because he possessed several pornographic videos, because he did not adhere to his curfew, and because he was "unwilling[] to fully engage and participate in treatment".

After Silas was discharged from the sex offender treatment program, the State petitioned the superior court to revoke his probation. The State alleged that Silas violated the requirement that he was "not to discontinue treatment" without his probation officer's approval.

At the ensuing revocation hearing in the superior court, Silas's attorney argued that Silas had not "discontinued" his sex offender treatment — rather, Silas had been terminated from the program against his will. Through his cross-examination of Silas's probation officer and his cross-examination of Holden, as well as through Silas's own testimony, the defense attorney tried to show that Holden had terminated Silas from the program based on erroneous assumptions about Silas's probation conditions, and based on unsupported assertions about Silas's purported "unwillingness" to engage in treatment.

With regard to Silas's possession of pornographic videos, Holden's testimony on cross-examination revealed that she mistakenly believed that Silas's conditions of probation prohibited him from possessing pornography.

With regard to the curfew, Silas testified that the curfew was imposed on him to prevent him from socializing with Patsy Schreiber, his romantic partner and the mother of his children. And Holden indicated that she thought the curfew was merely an implementation of Silas's conditions of probation. But Silas's probation officer testified that she had never prohibited Silas from having contact with Schreiber.

With regard to Silas's "hiding things" from his treatment providers, Holden asserted that Silas had engaged in acts of domestic violence while he was enrolled in the treatment program. But later, Holden essentially admitted that she was mistaken about this.

And with regard to Silas's alleged unwillingness to participate in the program, Holden offered no concrete examples of Silas's non-participation. She merely asserted:

> I felt like we lost [Silas] in his participation in group — his honest, you know, participation in group. ... He did not ever really fully engage [following his return to treatment after his incarceration for the theft of the laptop]. And I felt that we had a whole series of things that were beginning to happen again, whether they were at our direction or probation or parole ... that, okay, we're at another point here where we seem to have lost Roy as a client and a participant.

But Silas, for his part, testified that he remained committed to participating in sex offender treatment. He contended that he stopped volunteering things in the treatment sessions because, whenever he spoke, the facilitator would accuse him of lying.

In sum, the defense attorney tried to establish that most of Holden's reasons for discharging Silas from the treatment program were demonstrably unfounded, and that Silas's alleged unwillingness to participate in group therapy was a contested matter of opinion.

But during the defense attorney's cross-examination of Holden, while the attorney was attempting to demonstrate that Holden lacked any substantial grounds for terminating Silas from the program, the judge interrupted the cross-examination and declared that the defense attorney's questions were irrelevant to the issue of whether Silas had violated his probation. The judge indicated that Silas violated his probation because he was discharged from the treatment program — and that the reason for Silas's termination from the program was irrelevant. At the time, Silas's attorney seemingly agreed with the judge's assessment:

> *The Court*: Here's the problem ... . This is an adjudication [hearing, not a disposition hearing.] It seems abundantly clear that he was discharged from the treatment program. Now, if you want to talk about the reasons for that — as a matter of disposition — that's fine. But for adjudication [purposes], is there — are you contesting that he was discharged?

> *Defense Attorney*: Well, ... this could [be relevant] to disposition, Judge. I mean, this is part of what you have to think about when you sentence him.

> *The Court*: Right. I get your point. ... But as far as adjudication, ...

> *Defense Attorney*: No, you're correct. It wouldn't have to do with whether he was discharged from the program.

However, later in the hearing, Silas's attorney argued that the evidence presented at the hearing did not establish that Silas "discontinued" his treatment, either in the sense of deciding to stop treatment or even in the sense of failing to make good-faith efforts to participate in the treatment. Rather, the defense attorney argued, the evidence showed that Silas was terminated from the program without good reason — thus preventing Silas from fulfilling his treatment requirement.

The superior court rejected the defense attorney's position — ruling instead that Silas's termination from the treatment program was, in and of itself, a violation of his probation, regardless of the reason for Silas's termination:

> *The Court*: [Silas's conditions of probation stated that he was to] enter and successfully complete an approved sex offender treatment program ... as directed by the Department of Corrections — period. [And] the next sentence [of that same probation condition] is, "The defendant is not to discontinue treatment without written approval of the probation/parole officer." ... I'm going to find that he had an obligation to continue treatment ... .

After the superior court announced this ruling, Silas's attorney noted that the court had failed to address Silas's argument that he did not "discontinue" the treatment program — that he was instead terminated without good reason. The superior court responded by declaring that even if Silas was terminated from the program without good reason, Silas was still in "technical violation" of his conditions of probation.

Based on the superior court's finding that Silas had violated his probation, the court revoked Silas's probation and imposed 90 days of Silas's previously suspended jail time. The superior court also added three new probation conditions, including a condition that required Silas to enter and successfully complete any *other* treatment programs approved by the Department of Corrections, "including but not limited to

substance abuse treatment and domestic violence programming."  The court also declared that this new treatment requirement could include placement "in a *residential* mental health or substance abuse program for a length of time determined necessary by the appropriate professional."  (Emphasis added.)  In other words, Silas could be confined against his will in a residential treatment facility.

*Silas's probation could not be revoked unless there was good cause—and Silas's termination from the treatment program did not necessarily establish good cause to revoke his probation*

In Silas's brief to this Court, he argues that he did not "discontinue" his sex offender treatment; rather, he was dismissed from the program involuntarily.  Silas contends that the word "discontinue" connotes a deliberate or willful act, and that therefore the State had to prove that Silas deliberately or willfully ended his participation in the treatment program.  Because Silas took no affirmative action to discontinue the treatment, he argues that he did not violate his probation.

The State responds that the involuntariness of Silas's departure from the treatment program should not be considered a defense — for otherwise, "any degree of half-hearted, minimal[] effort" would suffice to satisfy a defendant's treatment obligation.

We agree with the State that the involuntariness of Silas's discharge from the treatment program is not, standing alone, a defense to the allegation that Silas violated his treatment requirement.  As the supreme court explained in *Trumbly*, and as this Court explained in *Pulusila*, the real question is whether, given the reasons for Silas's termination from the treatment program, the superior court could reasonably conclude that the aims of probation could not be achieved, and that the continuation of

Silas's probationary status "would be at odds with the need to protect society and society's interest in [Silas's] rehabilitation."

Under *Trumbly* and *Pulusila*, the superior court could conceivably find good cause to revoke Silas's probation even if Silas had been terminated from the treatment program involuntarily — if, for example, despite Silas's best efforts, his cognitive deficits or emotional difficulties prevented him from deriving any substantial benefit from the program, and if there was no alternative treatment available to achieve the court's rehabilitative goals while leaving Silas at liberty in the community under probation supervision.

The superior court would have confronted a similar issue if Silas had been terminated from treatment involuntarily because the program's funding was cut. Under *Trumbly* and *Pulusila*, the question is not whether the termination of treatment was Silas's fault — although Silas's fault or lack of fault would certainly be a relevant factor in the court's assessment under *Trumbly* and *Pulusila*. Rather, the question is whether, given the new situation, the superior court could reasonably conclude that the aims of Silas's probation could no longer be achieved, and that the continuation of Silas's probationary status "would be at odds with the need to protect society and society's interest in [Silas's] rehabilitation" — or whether, instead, alternative methods were available to achieve the goals of probation.

In the present case, even though Silas's attorney may have couched his argument in terms of the "involuntariness" of Silas's termination from the sex offender treatment program, the record of the superior court proceedings clearly shows that the defense attorney was trying to establish that Silas was terminated from the program for reasons that were unfounded — reasons that did not reflect on Silas's amenability to treatment.

The defense attorney's cross-examination of Julie Holden (the program director), as well as Silas's own testimony at the hearing, were designed to show that Holden discharged Silas from the treatment program for reasons that were either demonstrably wrong or, at best, were supported only by vague and unspecific assertions that Silas had failed to "engage" — assertions which Silas actively disputed.

For instance, Holden conceded that she had mistakenly believed that Silas's possession of pornography was a violation of his conditions of probation. She also essentially conceded that she had been wrong in thinking that Silas had engaged in acts of domestic violence during his treatment. And according to Silas's testimony, his curfew was imposed under the mistaken belief that his probation officer had prohibited him from socializing with his romantic partner, Patsy Schreiber. It is unclear whether Holden would have discharged Silas from the treatment program if she had understood the true state of affairs.

The only remaining ground that Holden offered for terminating Silas from the treatment program was her assertion that Silas had not been "full[y] participating, not being honest, ... [not] engaging in the therapeutic process." But other than the three discredited instances discussed in the preceding paragraph, Holden offered nothing specific to back up her conclusory assertion that Silas had not been making good-faith efforts to participate in treatment. And Silas (in his own testimony) actively disputed this assertion.

The superior court refused to resolve any of these issues. Instead, the court ruled that Silas's probation could be revoked if Silas was terminated from the treatment program for *any reason* — even if the factual premises underlying Silas's termination were demonstrably mistaken or actively disputed.

This was error. Under *Trumbly* and *Pulusila*, the question the superior court should have been asking is whether the circumstances of Silas's termination from

the program showed that the aims of Silas's probation could not be achieved, and that continuation of Silas's probationary status would be contrary to the need to protect society and the need to foster Silas's rehabilitation.

Because the superior court declined to resolve the factual disputes raised by Silas and his attorney, the existing record fails to establish whether Silas was terminated from treatment for reasons that cast substantial doubt on his amenability to treatment and the efficacy of his continued probation. Thus, the record fails to support the superior court's revocation of Silas's probation.

We therefore vacate the superior court's revocation of Silas's probation. If the State chooses to pursue this matter further, the State must establish that there is good cause to revoke Silas's probation under the legal standard that we have explained here.

*The new conditions of probation that the superior court added when it revoked Silas's probation*

As we explained earlier, after the superior court revoked Silas's probation for his alleged act of "discontinuing" sex offender treatment without his probation officer's approval, the court added several new conditions to Silas's probation. Because we are vacating the superior court's finding that Silas violated his probation, any immediate review of these new conditions is technically moot. [1]

---

[1] See *State v. Henry*, 240 P.3d 846, 848 (Alaska App. 2010), and *Reyes v. State*, 978 P.2d 635, 640-41 (Alaska App. 1999), where this Court held that a sentencing judge cannot alter a defendant's conditions of probation to the defendant's detriment unless the State proves that the defendant has violated the conditions of their probation or that the defendant has engaged in some other post-sentencing conduct that establishes a substantial reason to conclude that the defendant's current conditions of probation are not adequately ensuring the defendant's rehabilitation or adequately protecting the public.

We nevertheless address certain aspects of these new conditions, to avoid any repetition of error should the State decide to renew its probation revocation petition against Silas.

At the revocation hearing, Silas's attorney challenged a purported order issued by Silas's probation officer that prohibited Silas from contacting Patsy Schreiber, the woman who was Silas's romantic partner and the mother of his children. Silas and Schreiber wanted to get married, but Silas told the court that they were prevented from seeing each other because of his probation officer's order.

The State's response was that no such order existed. Silas's probation officer, his treatment supervisor, and his mental health provider all denied that they had ever prohibited Silas from seeing Schreiber.

Nevertheless, at the end of the hearing, the superior court denied Silas's request to resume contact with Schreiber. The court gave no reasons for its ruling.

The State concedes that the superior court's ruling was error, because the court made no special findings to justify this interference with Silas's familial relationships. See *Dawson v. State,* 894 P.2d 672, 680-81 (Alaska App. 1995), and *Simants v. State*, 329 P.3d 1033, 1038-39 (Alaska App. 2014).

But there is another significant problem with the superior court's order. Even though Silas alleged that his probation officer had prohibited him from contacting or socializing with Schreiber, the three State's witnesses who supervised Silas's probation — his probation officer, his treatment supervisor, and his mental health provider — all denied that such a restriction had ever been placed on Silas. Nor did they offer any reason why such a restriction should be placed on Silas.

Given this record, the superior court lacked any plausible basis for prohibiting Silas from seeing Schreiber. We therefore reverse the superior court's order on this matter.

We also need to address the superior court's decision to impose a new condition on Silas requiring him to enter any and all treatment programs approved by the Department of Corrections if he is ordered to do so by his probation officer.

The superior court specified that these unnamed programs should include "domestic violence programming", even though Silas's case does not appear to include any aspect of physical violence, and even though the court made no finding that such a program had any connection to Silas's rehabilitation or to preventing Silas from posing a danger to the public. *See Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977).

If the superior court again revokes Silas's probation, and if the court again concludes that Silas should be required to participate in domestic violence programming, the court must make specific findings justifying this new requirement.

Another provision of this same new condition of probation requires Silas to "enroll in a *residential* mental health or substance abuse program for a length of time to be determined necessary by the appropriate professional." (Emphasis added.) It was illegal for the superior court to add this new requirement to Silas's probation, because the court was potentially increasing Silas's total period of incarceration. *See Christensen v. State*, 844 P.2d 557, 559 (Alaska App. 1993); AS 12.55.100(c).

*Conclusion*

The superior court's "Disposition Order" — *i.e.*, its order revoking Silas's probation and adding new conditions of probation — is VACATED in part and REVERSED in part.