NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| FALEALO MANUELE PULUSILA,<br><br>                     Appellant,<br><br>        v.<br><br>STATE OF ALASKA,<br><br>                     Appellee. | Court of Appeals No. A-12783<br>Trial Court No. 3AN-13-5018 CR<br><br><br>O P I N I O N<br><br><br>No. 2599 — May 18, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Patricia L. Haines, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

In September 2016, Falealo Manuele Pulusila was on felony probation, and his driver's license was suspended. Pulusila borrowed another man's truck. The

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Anchorage police contacted Pulusila; one thing led to another; and the police searched the truck.

Inside the front console, the police found a small explosive device. Underneath a pile of clothes in the back seat, they found ammunition for a firearm. And inside a backpack in the back seat, they found a methamphetamine pipe.

One of Pulusila's conditions of probation prohibited him from having any ammunition or explosives in his "custody, residence, or vehicle". Another of Pulusila's conditions of probation prohibited him from having any drug paraphernalia in his "residence or ... any vehicle under [his] control". Based on the discovery of the explosive device, the ammunition, and the meth pipe in the truck that Pulusila was driving, the State petitioned the superior court to revoke Pulusila's probation.

Pulusila contested the State's petition. He pointed out that the truck was borrowed, and he asserted that he was unaware that the truck contained the explosive device, the ammunition, and the meth pipe.

The superior court did not resolve the question of whether these items belonged to Pulusila, or whether Pulusila was even aware that the truck contained these items. Instead, the superior court ruled that it did not make any difference whether Pulusila knew that these items were in the truck.

More specifically, the superior court ruled that Pulusila's probation could lawfully be revoked if the State proved (1) that Pulusila was aware of the two probation conditions that prohibited him from having these items, and (2) that the prohibited items were present in a vehicle that was under Pulusila's control, even if Pulusila did not know about them.

According to the court, it was no defense that Pulusila was unaware that the prohibited items were in the vehicle. If the law were otherwise, the superior court

declared, this would "give free rein" to anyone on probation to say, "It's not my car", or, if the car was rented, "[Those items were] left in there by [a] previous renter."

Based on this ruling, the superior court revoked Pulusila's probation and imposed all of Pulusila's remaining suspended jail time.

Pulusila now appeals the superior court's decision.

Pulusila's first argument is that, contrary to the superior court's ruling, his two probation conditions did not make him strictly liable for any prohibited items that might be found in his residence or vehicle. Pulusila contends that his probation conditions prohibited him from *knowingly* possessing ammunition, explosives, or drug paraphernalia.

Pulusila next argues that if his probation conditions did, in fact, make him strictly liable for any prohibited items found in the borrowed truck, then those probation conditions violated the constitutional guarantee of due process of law.

The State responds that Pulusila's probation conditions did, indeed, impose strict liability for any prohibited items found in the borrowed truck. The State contends that even if Pulusila had no reason to know that the truck contained these prohibited items, Pulusila nevertheless had a duty to make sure, before he borrowed the truck, that the vehicle did not contain any items that he was prohibited from having.

The State further contends that this kind of strict liability is lawful. More specifically, the State argues that, under Alaska law, a court can properly revoke a defendant's probation even when it is clear that the defendant was not at fault and did not act with any culpable mental state. According to the State, the defendant's lack of fault is a matter that a court should consider at the disposition hearing (*i.e.*, at sentencing) — *after* the court has found that the defendant violated their probation.

We will address these contentions in reverse order. We will first discuss the State's claim that Alaska law allows a court to hold a defendant strictly liable for any

violation of probation, regardless of the defendant's lack of fault. As we explain in this opinion, the State's argument is partially correct. There *are* circumstances when a court can revoke a defendant's probation for a violation of probation that was not the defendant's fault. But there is no universal rule that a defendant's lack of fault is irrelevant.

Rather, under Alaska law, a court can revoke a defendant's probation when the defendant's violation of probation supports the conclusion that the aims of probation are not being met, and that the defendant's continued release on probation would be at odds with the goals of protecting society and fostering the defendant's rehabilitation. When a court makes this determination, the defendant's fault (or lack of fault) may sometimes have little relevance — but conversely, the defendant's fault or lack of fault may sometimes be a crucial factor in the court's decision.

We will then address the question of how to interpret Pulusila's conditions of probation, given our construction of Alaska probation law. As we explain in this opinion, we agree with Pulusila that his conditions of probation only prohibited him from *knowingly* possessing the ammunition, explosives, and drug paraphernalia. And because of this, the superior court was required to resolve the contested issue of whether Pulusila was aware that these prohibited items were present in the vehicle.

*The question of whether a defendant's probation may be revoked even when the defendant bears no fault for their failure to abide by the conditions of probation*

As we just explained, the State takes the position that a defendant's probation can be revoked even when the defendant's action (or the defendant's failure to act) was not accompanied by any culpable mental state — in other words, even when the failure to abide by the conditions of probation was not the defendant's fault. The

– 4 –                                                                 2599

State bases this argument on our supreme court's decision in *Trumbly v. State*, 515 P.2d 707 (Alaska 1973).

### (a) The Alaska Supreme Court's decision in *Trumbly*

In *Trumbly*, the State petitioned the sentencing court to revoke a defendant's probation because the defendant failed to promptly report to his probation officer upon his release from prison. In fact, Trumbly left Alaska without obtaining his probation officer's permission. [1]

Trumbly defended by asserting that he was mentally ill, that his mental disease or defect "deprived him of the substantial capacity to conform his conduct to the conditions of [his] probation", and that he therefore should not be held accountable for his failure to report and for his unauthorized departure from the state. [2]

This phrasing — "substantial capacity" to "conform [one's] conduct" to the requirements of the law — is drawn from the second prong of the American Law Institute's formulation of the insanity defense. *See* § 4.01(1) of the Model Penal Code (Official Draft, 1962). This was the version of the insanity defense that was in effect in Alaska when Trumbly's case was litigated. *See Schade v. State*, 512 P.2d 907, 911 & n. 2 (Alaska 1973).

The supreme court concluded that even if Trumbly lacked the substantial capacity to obey his conditions of probation because of mental disease or defect, this did not prevent the sentencing court from revoking Trumbly's probation.

---

[1] *Trumbly*, 515 P.2d at 708.

[2] *Ibid*.

The question, according to the supreme court, was not whether Trumbly was morally blameworthy or potentially criminally liable for failing to abide by the conditions of his probation. Rather, the question was whether the sentencing court could reasonably conclude that the aims of probation were not being met, and that Trumbly's continued release on probation "would be at odds with the need to protect society and society's interest in [Trumbly's] rehabilitation":

> [T]he defense of insanity is irrelevant to the issues which are to be determined in a probation revocation hearing. At such a hearing, the inquiry is focused on whether the probationer engaged in conduct violative of the conditions under which he was permitted to [remain free on probation]. ... [A] probationer should [not] be able to prevail upon an assertion that his probation should not be revoked because mental illness renders him unable to conform his conduct to the terms of his probation. Conformity to reasonable and lawful terms of probation is a prerequisite to the continuation of probationary status.

*Trumbly*, 515 P.2d at 708-09.

The supreme court then described the procedures that a court should follow, and the decisions that a court must make, when the government petitions the court to revoke a defendant's probation:

> The first step in a [probation] revocation decision involves a wholly retrospective factual question: whether the [probationer] has in fact acted in violation of one or more of the conditions of his [probation]. Only if it is determined that the [probationer] did violate the conditions does the second question arise: should the [probationer] be recommitted to prison[,] or should other steps be taken to protect society and improve chances of rehabilitation.

> The requirement that probation revocation follow after a showing of "good cause" [*see* AS 12.55.110] requires the trial judge to find that [a] continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation. Revocation should follow [a defendant's] violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.

*Trumbly*, 515 P.2d at 709.

### (b) The State's suggested interpretation of <u>Trumbly</u>

The State argues that we should draw two conclusions from the *Trumbly* decision.

First, the State suggests that probation revocation proceedings should be viewed as having two parts. According to the State, the first part of the proceedings is an adjudication phase, where the court determines the historical facts and decides whether the defendant has violated the terms of probation. Then, if the court finds that the defendant has violated their probation, the proceedings move to a disposition phase, where the court decides what should be done about the defendant's violation of probation — which could range from simply returning the defendant to probation, all the way to imposition of the entirety of the defendant's remaining suspended sentence.

Second, the State suggests that *Trumbly* stands for the proposition that a defendant's lack of fault is irrelevant in the adjudication phase of the proceedings. According to the State, the fact that a defendant lacked any culpable mental state, and that a defendant may have done their best to conform to the conditions of probation, only becomes relevant during the disposition phase of the proceedings. Even if the defendant was not at fault, this does not prevent the sentencing court from finding that the

– 7 –

defendant violated the conditions of probation. The defendant's lack of fault only matters when the court decides what consequences should be imposed for the violation.

We conclude that both of the State's assertions mischaracterize the supreme court's decision in *Trumbly*.

First, even though *Trumbly* appears to describe probation revocation proceedings as having two stages, it is clear from the supreme court's discussion that a sentencing court must perform *three* duties. The court's first duty is to ascertain the historical facts of the case. The court's second duty is to decide whether, given those facts, there is good cause to revoke the defendant's probation. (Under AS 12.55.110(a), a defendant's probation can only be revoked for good cause.) The court's third duty — which arises only if the court has found good cause to revoke the defendant's probation — is to determine what consequences, if any, should be imposed on the defendant.

The problem with describing probation revocation proceedings as having two phases — an "adjudication" phase and a "disposition" phase — is that this description can mask the underlying reality that the court must perform three separate duties. This problem becomes acute when, as in Pulusila's case, the State argues that the "adjudication" phase encompasses *both* the court's duty to ascertain the historical facts *and* the court's duty to decide whether those facts constitute good cause for revoking the defendant's probation.

By grouping both of these duties into the adjudication phase, and then arguing that a defendant's lack of fault is irrelevant to the entire adjudication phase, the State reaches the conclusion that a defendant's lack of fault is irrelevant to the question of whether there is good cause to revoke the defendant's probation. But *Trumbly* says the opposite.

In *Trumbly*, the supreme court expressly recognized that, whatever the historical facts of a specific case might be, our law forbids a sentencing court from

revoking a defendant's probation unless the court finds that those facts constitute "good cause" to revoke probation. *Id.* at 709. The supreme court then defined "good cause" as a finding that "the corrective aims of probation cannot be achieved", and that "continuation of [the defendant's] probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation." *Ibid.*

The *Trumbly* court did not say that a defendant's lack of culpability was irrelevant to this determination. Rather, the *Trumbly* court said that *a defendant's lack of responsibility under the second prong of the American Law Institute's test for insanity* was irrelevant to this determination.

As we have already explained, Trumbly asserted that his probation should not be revoked because he met the second prong of the American Law Institute's test for insanity — *i.e.*, he suffered from a mental disease or defect, and this mental disease or defect deprived him of "the substantial capacity to conform his conduct to the conditions of [his] probation".

This was *not* a claim that Trumbly lacked any culpable mental state when he violated his probation. Rather, Trumbly was claiming that, despite his awareness that he should be reporting to his probation officer, and that he should not leave Alaska without permission, his failure to abide by these duties should be excused because his mental disease or defect deprived him of the capacity to conform his conduct to the requirements of his probation.

We explained this point of law in *Hart v. State*, 702 P.2d 651 (Alaska App. 1985):

> [W]hatever insanity defense exists [under the "substantial capacity" test], it is different from ... [a negation of] the prosecution's proof that the defendant had the necessary *mens rea* to commit a particular offense ... . [*See*]

– 9 –                                                                              2599

> *Mill v. State*, 585 P.2d 546 (Alaska 1978) (mental disease or defect can prevent formation of specific intent but not general intent). ... [E]ven if the Alaska legislature ... entirely repeal[ed] any insanity defense, it would still be necessary for the state to prove beyond reasonable doubt that the defendant engaged in conscious voluntary acts, [*see* AS 11.81.600(a)], and [that the defendant] possessed the requisite *mens rea* for the offense. AS 12.47.020.

*Hart*, 702 P.2d at 655-56.

In other words, under the American Law Institute's test, proof that a defendant lacked the substantial capacity to conform their conduct to the requirements of the law was not a negation of the defendant's *mens rea*. Rather, it was an additional factor that excused the defendant's *mens rea*. [3]

This is the context for the supreme court's statement in *Trumbly* that, even assuming Trumbly could establish the second prong of the American Law Institute's insanity test, Trumbly's inability to stop himself from violating the conditions of probation was not a valid defense to a probation revocation proceeding — because, if Trumbly could not stop himself from violating his probation, then it was clear that the aims of Trumbly's probation were not being met, and that Trumbly's continued release

---

[3] For an example of the supreme court's application of this principle, see *Smith v. State*, 614 P.2d 300, 304 (Alaska 1980):

All the evidence points to a finding that Smith ... appreciate[d] the wrongfulness of his conduct when he shot Officer Jordan. Smith admitted ... that what he did was illegal and morally wrong. All three medical experts testified that Smith, even if suffering from a mental illness, could appreciate the wrongfulness of his conduct. The record contains no contrary evidence. Thus, [our] focus ... is on the second prong of the legal responsibility test: whether Smith had substantial capacity to conform his conduct to the requirements of the law when he shot Officer Jordan.

on probation "would be at odds with the need to protect society and society's interest in [his] rehabilitation".

Thus, the State misreads *Trumbly* when the State asserts that *Trumbly* stands for the proposition that a defendant's lack of culpability for a probation violation is *never* relevant when assessing whether there is good cause to revoke the defendant's probation.

For example, nothing in *Trumbly* suggests that the supreme court would have upheld a revocation of Trumbly's probation if Trumbly had failed to report to his probation officer because he was involved in a car accident on his way to the probation office and was taken to the hospital. Similarly, nothing in *Trumbly* suggests that the supreme court would have upheld a revocation of probation if Trumbly's probation officer had moved up Trumbly's appointment at the last minute, and if Trumbly did not arrive until his normally scheduled time because he never received notice of the new, earlier time for his appointment.

These circumstances — the lack of a voluntary act in the first example, and the lack of a culpable mental state in the second example — *would* be relevant to a determination of whether there was good cause to revoke Trumbly's probation. We therefore reject the State's contention that *Trumbly* stands for the proposition that a defendant's lack of culpability is completely irrelevant when a court decides whether the facts establish good cause to revoke the defendant's probation.

Instead, we interpret the supreme court's decision in *Trumbly* as consistent with the approach reflected in *State v. Leach*, 20 P.3d 709 (Idaho App. 2001). Like *Trumbly*, the *Leach* decision emphasizes that the ultimate issue to be decided is whether the defendant's conduct demonstrates that the conditions of probation are not ensuring the public safety or fostering the defendant's rehabilitation — and that *sometimes* there

2599

will be good cause to revoke the defendant's probation even when the defendant's violation of probation was not willful or was beyond the defendant's control. [4]

(The State cites dozens of cases from other jurisdictions in support of its overly expansive reading of *Trumbly*. Many of these cases do, indeed, include language suggesting that a defendant's lack of culpability is no excuse in a probation revocation proceeding. But most of these cases involve the same issue presented in *Trumbly* — *i.e.*, whether a defendant's violation of probation should be excused because of the defendant's mental disease or defect. [5] And in several other cases, the expansive language that the State relies on is *dictum* — because those courts ultimately based their decisions on findings by the sentencing court that the defendant *did act* with a culpable mental state. [6])

---

[4] *See Leach*, 20 P.3d at 713: "In deciding whether revocation of probation is the appropriate response to a violation, the court considers whether the probation is achieving the goal of rehabilitation and whether continued probation is consistent with the protection of society. ... [If] a probationer's violation of a probation condition was not willful, or was beyond the probationer's control, a court may not revoke probation and order imprisonment without first considering alternative methods to address the violation. Only if the trial court determines that alternatives to imprisonment are not adequate in a particular situation to meet the state's legitimate interest in punishment, deterrence, or the protection of society, may the court imprison a probationer who has made sufficient, genuine efforts to obey the terms of the probation order." (Citations omitted)

[5] *See*, *e.g.*, *United States v. Gallo*, 20 F.3d 7, 14-15 (1st Cir. 1994); *United States v. Brown*, 899 F.2d 189, 194 (2nd Cir. 1990); *Knight v. Estelle*, 501 F.2d 963, 964-65 (5th Cir. 1974); *United States v. Pinjuv*, 218 F.3d 1125, 1127, 1130-31 (9th Cir. 2000).

[6] *See*, *e.g.*, *United States v. Jones*, 133 F.Appx 824, 826 (3rd Cir. 2005); *United States v. Warner*, 830 F.2d 651, 657-58 (7th Cir. 1987); *Vann v. State*, 143 So.3d 850, 861-62 (Ala. Crim. App. 2013); *State v. Joe*, unpublished, 2008 WL 2838501 at *4 (Ariz. App. 2008); *People v. Colabello*, 948 P.2d 77, 79-80 (Colo. App. 1997).

*Why we conclude that Pulusila's conditions of probation prohibited him
from <u>knowingly</u> possessing the prohibited items in the borrowed vehicle*

As we explained in the introductory section of this opinion, the superior court ruled that Pulusila's conditions of probation made him strictly liable for the presence of the explosive device, the ammunition, and the meth pipe in the truck, even if Pulusila had no reason to know that the truck contained these prohibited items.

However, the superior court did not take testimony (or consider any other evidence) when it construed the meaning of Pulusila's two probation conditions. Instead, the superior court based its ruling on the wording of the conditions — and on the perceived benefits of a policy that would allow sentencing courts to revoke a defendant's probation based on prohibited items that were left in a rental car by a previous renter.

In these circumstances, we do not owe deference to the superior court's interpretation of the two probation conditions. Instead, we will independently determine how a reasonable person in Pulusila's place would have understood these probation conditions, "taking into consideration the language of the disputed provision[s] ... and the case law interpreting similar provisions". [7]

Here is the text of the two provisions at issue:

> You shall not own, possess, purchase, transport, handle[,] or have in your custody, residence, or vehicle, any firearm, ammunition, explosives, or weapon(s) ... capable of inflicting bodily harm or incapacitation.

> You shall not use, possess, handle, purchase, give[,] or administer any controlled substance, including marijuana, without a valid prescription. ... You shall not have on your

---

[7]     *Joubert v. State*, 926 P.2d 1191, 1193 (Alaska App. 1996), citing *Peterson v. Wirum*, 625 P.2d 866, 872 n. 10 (Alaska 1981).

person, in your residence or vehicle[,] or [in] any vehicle under your control, any drugs or paraphernalia normally associated with the illicit use of drugs.

The State asserts that these two provisions, on their face, prohibited Pulusila from being in control of a vehicle that had these prohibited items in it — even if Pulusila remained wholly ignorant of their presence. This argument is based on a misunderstanding of the law of possession.

Under Alaska's criminal law, to prove that a person "possessed" an item, the government must prove that the person engaged in a *voluntary act* of possessing or controlling the item. AS 11.81.600(a). In this context, a "voluntary" act of possession means physical possession or control where the person "was aware of the physical possession or control for a sufficient period to have been able to terminate it." AS 11.81.900(b)(66).

The State points out that, strictly speaking, the definitions contained in AS 11.81 apply only to the interpretation of the criminal statutes in Title 11. But AS 11.81.600(a) and AS 11.81.900(b)(66) merely codify the common understanding of what "possession" means. Reasonable people would not expect that a court could revoke a person's probation and send them to prison for "possessing" something that they had no knowledge of.

As the Supreme Court of California recently noted in *People v. Hall*, 388 P.3d 794, 799 (Cal. 2017), "knowledge of the contraband's presence and of its restricted nature is implicit in probation conditions restricting firearms and narcotics, regardless of any minor variations in the wording of those conditions."

We conclude that Pulusila's conditions of probation must be interpreted in light of this common understanding. We do not believe that a reasonable person in Pulusila's circumstances would interpret his probation conditions as authorizing the

superior court to revoke Pulusila's probation and send him to prison if his teenage child, or one of his child's friends, secretly brought marijuana into his home. Likewise, we do not believe that a reasonable person in Pulusila's circumstances would interpret his probation conditions as authorizing the superior court to revoke Pulusila's probation and send him to prison if Pulusila borrowed or rented a car and, unbeknownst to him, someone else had left a weapon or drugs in the car.

This interpretation of the two probation conditions is also supported by the rule laid down by our supreme court in *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977) — the rule that conditions of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public[,] and [not] unduly restrictive of liberty."

*Roman* counsels us that, if there is ambiguity in the meaning of a probation condition, we should consider whether either of the two competing interpretations makes more sense in light of the purposes of probation. Here, it is unclear what public benefit would be achieved by sending probationers back to jail for "possessing" explosives, ammunition, or drug paraphernalia that they did not know they had.

For these reasons, we conclude that Pulusila's two conditions of probation prohibited him from *knowingly* possessing the listed prohibited items. Thus, without proof that Pulusila knew that these items were in the truck, the superior court had no basis for finding that Pulusila violated these conditions of his probation.

In its brief to this Court, the State asserts that the superior court affirmatively found that Pulusila was, in fact, aware of the presence of the prohibited items in the vehicle — that Pulusila's claim of ignorance was "simply not supported by the facts". But the record fails to support the State's characterization of the superior court's ruling. The superior court expressly ruled that it *did not make any difference* whether Pulusila knew that the prohibited items were present in the vehicle. Indeed, the

court declared that it would be contrary to good policy to require the State to prove that Pulusila was aware of these items in the vehicle.

Because of this ruling, the superior court never resolved the issue of whether Pulusila was aware of the presence of the prohibited items in the truck. Instead, the superior court mistakenly concluded that the resolution of this issue was irrelevant to the question of whether Pulusila violated the conditions of his probation.

*Conclusion*

The superior court's judgement is REVERSED. The State is free to renew its petition to revoke Pulusila's probation, but the State must prove that Pulusila knowingly possessed the prohibited items.

Given our resolution of this issue, we need not address Pulusila's claim that his probation revocation sentence was excessive.