*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | Supreme Court No. S-17124 |
| Petitioner, | ) | Court of Appeals No. A-12783 |
| | ) | |
| v. | ) | Superior Court No. 3AN-13-05018 CR |
| | ) | |
| FALEALO MANUELE PULUSILA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7463 – July 2, 2020 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Patricia L. Haines, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Petitioner. Callie Patton Kim, Assistant Public Defender, and Beth Goldstein, Acting Public Defender, Anchorage, for Respondent.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

A man was arrested in 2013 and after conviction was sentenced to 48 months' imprisonment with 42 months suspended and three years' probation. His probation officer successfully petitioned to revoke probation four times. This case

involves the fifth petition for probation revocation, in which the probation officer alleged that the probationer was in possession of certain prohibited items after he was found in a truck with those items. The probationer argued that the State had to show that he knew the items were in the borrowed truck for there to be a violation. The superior court disagreed and imposed all of the remaining time in the probationer's suspended sentence. The court of appeals reversed, holding that there was a mens rea requirement for possession as a condition of probation.

The State petitioned for hearing, arguing that the court of appeals significantly modified our decision in *Trumbly v. State*,[1] which outlines the proper analytical framework for probation revocation hearings; the State also argued that the court of appeals erred in holding that the probation condition included a mens rea requirement. We granted the petition[2] and now reaffirm our holding in *Trumbly* and its two-stage probation revocation hearing process. We also hold that the appropriate mens rea requirement for possession of items prohibited by a condition of probation is a negligence standard, not an actual knowledge standard: the State must prove the probationer knew or should have known he was in possession of items prohibited by a condition of probation. We reverse the court of appeals' decision and remand to the superior court to determine whether Pulusila knew or should have known that he was in possession of the prohibited items.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

In May 2013 Falealo Pulusila was stopped by police officers in Anchorage.

---

[1]   515 P.2d 707 (Alaska 1973).

[2]   *State v. Pulusila*, No. S-17124 (Alaska Supreme Court Order, Nov. 16, 2018).

He was charged with fourth-degree misconduct involving a controlled substance (methamphetamine), misconduct involving weapons in the fifth degree, failure to carry proof of auto insurance, and failure to carry vehicle liability insurance. He entered into a plea agreement in July 2013, pursuant to which he pleaded guilty to the fourth-degree misconduct charge and the State dismissed the other charges; the court sentenced him to 48 months' imprisonment with 42 months suspended and three years' probation.

In July 2014 Pulusila's probation officer petitioned to revoke his probation for five alleged violations. The court found that he violated his probation and ordered him to serve 25 days of his suspended jail time. Over the next two years the probation officer petitioned the court four more times to revoke Pulusila's probation, and the court ordered him to serve various amounts of his suspended jail time in connection with each. This appeal involves the probation officer's fifth petition to revoke probation.

## B. Proceedings

### 1. Before the superior court

The probation officer petitioned the superior court to revoke Pulusila's probation in September 2016, alleging that he violated special probation condition one[3] and general probation condition five.[4] She alleged that Pulusila had violated his

---

[3] "You shall not use, possess, handle, purchase, give or administer any controlled substance, including marijuana, without a valid prescription. . . . You shall not have on your person, in your residence or vehicle or any vehicle under your control, any drugs or paraphernalia normally associated with the illicit use of drugs. . . . You shall submit to a search of your person, personal property, residence, vehicle or any vehicle over which you have control, for the presence of illicit drugs or drug paraphernalia."

[4] "You shall not own, possess, purchase, transport, handle or have in your custody, residence, or vehicle, any firearm, ammunition, explosives, or weapon(s) . . . capable of inflicting bodily harm or incapacitation. You shall not carry any deadly weapon on your person except a pocket knife with a 3″ or shorter blade. You must
(continued...)

conditions of probation in August by ingesting methamphetamine and in September by possessing ammunition, a knife with a blade longer than three inches, an explosive device, and drug paraphernalia, for a total of five violations.

At a contested hearing before the superior court in December, the State called a police officer and the probation officer as witnesses. Pulusila did not testify. The police officer described the events that led to the probation officer's petition. He explained that in September 2016 he was conducting a routine patrol in a high-crime area when he came across a truck parked at the end of a cul-de-sac. Pulusila was in the driver's seat. The police officer searched Pulusila and the vehicle.

The police officer testified that he found a black bag containing an explosive device in the center console of the truck. He stated that he also found a knife with a five-inch blade on the floorboard next to the gear shifter. The police officer detained Pulusila and obtained a search warrant to further search the vehicle. The officer testified that he found a BB gun between the driver's seat and the center console seat; a magazine pouch containing two magazines loaded with .45 caliber bullets in the back portion of the vehicle's cab; and what he described as a methamphetamine pipe with residue in it in a backpack in the back compartment of the truck behind the front seat. The probation officer testified about the reasons she had brought the previous four petitions to revoke probation and Pulusila's recurring methamphetamine use.

After both witnesses testified, Pulusila argued that the State failed to meet its burden of proof on the probation violations. He asserted that "the State has to prove that there was some sort of willful violation of probation" and analogized "willful" to "knowing." He argued:

---

[4]      (...continued)
submit to any search for the aforementioned weapons."

So what the State basically has to do is show that Mr. Pulusila was knowledgeable or at least that he disregarded a substantial risk that this vehicle that he had borrowed from a friend actually contained a pipe bomb. I'd submit . . . that the State has provided no evidence whatsoever . . . linking Mr. Pulusila to the vehicle. None of his personal effects were found in it. They've provided no fingerprint evidence. In a case that's arguably this serious, you'd think that would be something they would look into, but they didn't, so they can't . . . meet their burden on that point to show that Mr. Pulusila even touched any of these items, much less was aware that they were in the car that he happened to be in.

Pulusila also argued that the State had not demonstrated that he was in "possession" of any of the items the police officer found in the vehicle, but instead only that they were in the vehicle with him. Finally, he claimed that his probation conditions did not put him on notice that this behavior violated his probation. Pulusila asked the court to find only one probation violation — that he ingested methamphetamine in August 2016 — and to revoke 60 days of his probation as a consequence.

The court made the following findings:

I do . . . find that the State has proven by a preponderance of the evidence — first on his admission that he ingested methamphetamine on August 19th, I do find that he was in possession or control of the ammunition found . . . in the vehicle. He was in possession and control of the explosive device. And I find that he was in possession of the pipe which, based on the burden of proof by a preponderance of evidence, was drug paraphernalia based upon the testimony of the officer that, in his experience that he has had, that those items are associated with drug use, in

particular methamphetamine use. So I find that the State has met its burden of proof on those.[5]

The court reasoned that if it required the State to prove knowledge, "that would give free rein to anyone on probation to say it's not my car . . . [o]r if it's a rental car . . . [to] say, well, it was left in there by the previous renter." The court explained that "the obligation is on the probationer to know what will be a violation of conditions of probation."

Pulusila then asked the court to clarify the "applicable mens rea for a probation violation," and the court explained that "the mens rea involved here is only that he needs to . . . have knowledge of what will be the conditions of violations. And if he has possession or control of these particular items and he knows that the condition is a violation, that's enough." The court went on to explain that Pulusila "possesses and controls this vehicle. Everything that is in that vehicle is under his possession and control and it's [his] obligation . . . to make sure that he doesn't have those items."

After finding Pulusila in violation of his probation on four of the five allegations, the court moved forward with the disposition phase of the hearing. Both the probation officer and the State asked the court to impose the remainder of his time. Pulusila again argued that the court must consider whether he knew about the items in the vehicle and, since the State had not shown he had knowledge, impose no more than the 60 days he had recommended.

The court considered the parties' recommendations and sentencing criteria and imposed the remainder of Pulusila's time based on his criminal history and the fact that this was his fifth violation of probation conditions. Pulusila appealed to the court of appeals.

---

⁵ The court did not find a violation regarding the knife because it was not on Pulusila's person, as the court interpreted the probation violation to require.

## 2. Before the court of appeals

On appeal Pulusila argued that the State has to prove he was aware of the contraband in his vehicle to establish a probation violation, claiming that possession required proof of knowledge and it was "fundamentally unfair and arbitrary to revoke a person's probation for being in the proximity of items of which he is unaware." He argued that the conditions of probation did not provide notice that his probation could be revoked for this behavior. Finally, he argued that the court erred by not considering his state of mind or knowledge at the disposition phase of the hearing.

The State responded that sufficient evidence supported the court's conclusion that Pulusila violated his probation conditions and the court was not required to find that he had knowledge of the items, noting that the majority of courts addressing the issue do not require proof of mental state at the adjudication phase of a probation revocation hearing. It argued that Pulusila was in possession of the items in the vehicle, and that he had notice that possession of weapons and drug paraphernalia would be a violation of the terms of his probation. Finally, the State argued that his sentence was not clearly mistaken, and that the court did consider Pulusila's mental state in sentencing, finding that he "had knowledge of the conduct prohibited by his probation conditions and that it was incumbent upon him to ensure that he did not possess or control any prohibited items."

In its opinion the court of appeals summarized its decision:

> We will first discuss the State's claim that Alaska law allows a court to hold a defendant strictly liable for any violation of probation, regardless of the defendant's lack of fault. As we explain in this opinion, the State's argument is partially correct. There *are* circumstances when a court can revoke a defendant's probation for a violation of probation that was not the defendant's fault. But there is no universal rule that a defendant's lack of fault is irrelevant.

Rather, under Alaska law, a court can revoke a defendant's probation when the defendant's violation of probation supports the conclusion that the aims of probation are not being met, and that the defendant's continued release on probation would be at odds with the goals of protecting society and fostering the defendant's rehabilitation. When a court makes this determination, the defendant's fault (or lack of fault) may sometimes have little relevance — but conversely, the defendant's fault or lack of fault may sometimes be a crucial factor in the court's decision.

We will then address the question of how to interpret Pulusila's conditions of probation, given our construction of Alaska probation law. As we explain in this opinion, we agree with Pulusila that his conditions of probation only prohibited him from *knowingly* possessing the ammunition, explosives, and drug paraphernalia. And because of this, the superior court was required to resolve the contested issue of whether Pulusila was aware that these prohibited items were present in the vehicle.[6]

The court discussed our decision in *Trumbly v. State*,[7] concluding that "even though *Trumbly* appears to describe probation revocation proceedings as having two stages, it is clear from the supreme court's discussion that sentencing courts must perform *three* duties": (1) "ascertain the historical facts of the case;" (2) "decide whether, given those facts, there is good cause to revoke . . . probation"; and (3) if good cause to revoke exists, "determine what consequences, if any, should be imposed."[8] The court then "conclude[d] that Pulusila's two conditions of probation prohibited him from *knowingly* possessing the listed prohibited items. Thus, without proof that Pulusila knew that these

---

**6**     *Pulusila v. State*, 425 P.3d 175, 177-78 (Alaska App. 2018) (emphasis in original).

**7**     515 P.2d 707 (Alaska 1973).

**8**     *Pulusila*, 425 P.3d at 179 (emphasis in original).

items were in the truck, the superior court had no basis for finding that Pulusila violated these conditions of his probation."[9]  The court held that the superior court erred by determining that Pulusila's knowledge was irrelevant and reversed the superior court's judgment, explaining that "[t]he State is free to renew its petition to revoke Pulusila's probation, but the State must prove that Pulusila knowingly possessed the prohibited items."[10]

The State filed a petition for hearing, which we granted.[11]

## III.  STANDARD OF REVIEW

"When reviewing questions of law, we exercise our independent judgment and adopt those rules of law that are 'most persuasive in light of precedent, reason, and policy.' "[12]

## IV.  DISCUSSION

### A.  We Reaffirm Our Decision In *Trumbly v. State*.

Probation is defined as "a procedure under which a defendant, found guilty of a crime upon verdict or plea, is released by the superior court subject to conditions imposed by the court and subject to the supervision of the probation service."[13] Probation is a creature of statute, so we look to the statutes in addressing any legal

---

[9]     *Id.* at 182 (emphasis in original).

[10]     *Id.* at 183.  The court also explained that it did not need to "address Pulusila's claim that his probation revocation sentence was excessive" given how it resolved the case.  *Id.*

[11]     *State v. Pulusila*, No. S-17124 (Alaska Supreme Court Order, Nov. 16, 2018).

[12]     *State v. Ranstead*, 421 P.3d 15, 19 (Alaska 2018) (quoting *Johnson v. State*, 328 P.3d 77, 81 (Alaska 2014)).

[13]     AS 33.05.080(3).

questions surrounding its implementation. The legislature has given courts authority to grant probation and set probation conditions[14] as well as to "revoke or modify any condition of probation, change the period of probation, or terminate probation."[15] The legislature has identified the circumstances under which a probationer can be arrested[16] and authorized courts to "revoke the probation and require the probationer to serve the sentence imposed or any lesser sentence" following arrest.[17] Upon revocation, a court can impose the full sentence only if it finds good cause.[18]

We also look to the Alaska Constitution for guidance in deciding questions surrounding probation. As amended in 1994, the constitution requires criminal administration to be premised upon "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[19] Courts should consider these factors in

---

[14] AS 12.55.080, AS 12.55.090(a), AS 12.55.100.

[15] AS 12.55.090(b).

[16] *See* AS 33.05.070(a) (allowing probation officer to arrest probationer for cause without warrant); AS 33.05.070(c) (allowing police officer to detain probationer with reasonable suspicion of violation of certain probation conditions and to arrest probationer without warrant with probable cause to believe such violations occurred); AS 12.55.085(b) (allowing probation officer to "without warrant or other process, rearrest the person so placed in the officer's care and bring the person before the court").

[17] AS 33.05.070(b); *see also* AS 12.55.085(c) ("Upon the revocation and termination of the probation, the court may pronounce sentence at any time within the maximum probation period authorized by this section . . . .").

[18] AS 12.55.110(a).

[19] Alaska Const. art. I, § 12.

addition to statutes in determining whether to grant, amend, or terminate probation.[20] Any probation decision by the courts must be consistent with both statutory and constitutional requirements.

In *Trumbly* we outlined the purpose of and procedure for a probation revocation hearing.

> A probation revocation hearing is not a criminal proceeding. The focus of the hearing should be to determine whether the probationer violated one or more of the conditions of his probation and the appropriate disposition in the event it is determined that petitioner violated his probation. In *Morrissey v. Brewer*, Chief Justice Burger wrote
>
> > []The first step in a [parole] revocation decision involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more of the conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation.[21]

Later in the opinion we provided further clarification on "the dual nature of a probation revocation hearing":

> As was noted previously, *Morrissey v. Brewer* and *Gagnon v. Scarpelli* illuminate the dual nature of a probation revocation hearing. The first facet of such a hearing involves "a wholly retrospective factual question: whether the

---

[20]    *See State v. Ranstead*, 421 P.3d 15, 19-20 (Alaska 2018).

[21]    *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973) (second alteration in original) (footnote omitted) (citation omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479-80 (1972)).

[probationer] has in fact acted in violation of one or more conditions of his [probation]." . . . The second aspect of the probation hearing requires a determination as to the disposition to be made once violation of the conditions of probation are established. [The probationer's] mental state at the time of the violation of the terms of his probation as well as at the time of the revocation hearing is relevant to the resolution of the second issue.[22]

In *Trumbly* we thus identified two stages to a probation revocation hearing. First, the court must make a finding of fact regarding whether the probationer violated a probation condition. If the court does not find a violation, the hearing ends. If the court does find a violation, it proceeds with the second stage and determines the proper disposition given the violation. As part of the disposition stage, the court determines whether there is good cause to revoke probation.[23] We explained the "good cause" requirement:

The requirement that probation revocation follow after a showing of "good cause" requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.[24]

In its brief to this court the State argues that "the court of appeals revised this 'well-established and long-standing' two-step procedure, instead replacing it with

---

[22]     *Id.* at 709-10 (citations omitted) (quoting *Morrissey*, 408 U.S. at 480).

[23]     *See* AS 12.55.110(a) ("When sentence has been suspended, it may not be revoked except for good cause shown.").

[24]     *Trumbly*, 515 P.2d at 709 (footnote omitted).

'three separate duties.' "[25] We agree that the court of appeals misconstrued our decision in *Trumbly*.[26] As discussed above, the court of appeals identified three duties for a sentencing court: (1) "ascertain the historical facts of the case"; (2) "decide whether, given those facts, there is good cause to revoke . . . probation"; and (3) if there is good cause to revoke, "determine what consequences, if any, should be imposed."[27] The court of appeals thus suggests that a sentencing court should reach the disposition phase only if it has made a finding of good cause to revoke probation. This is not the case. Instead, the good cause determination is part of the disposition phase.

We reaffirm our decision in *Trumbly* and hold that trial courts should continue to apply *Trumbly*'s two-stage framework.[28] First, the superior court should ask "a wholly retrospective factual question: whether the [probationer] has in fact acted in

---

[25]     *See Rich v. State*, 640 P.2d 159, 162 (Alaska 1982) ("well-established and long-standing"); *Pulusila v. State*, 425 P.3d 175, 179 (Alaska App. 2018) ("three separate duties").

[26]     The court of appeals' confusion may have stemmed from its misunderstanding of the State's arguments. In its brief before the court of appeals, the State argued that "the finding of 'good cause' occurs *only if* the court reaches step two of the probation proceeding; that is, if the court has already found a violation during the adjudication phase and is considering imposing jail time in the disposition phase." (Emphasis in original.) However, the court of appeals understood the State to be arguing "that the 'adjudication' phase encompasses *both* the court's duty to ascertain the historical facts *and* the court's duty to decide whether those facts constitute good cause for revoking the defendant's probation." *Pulusila*, 425 P.3d at 179 (emphasis in original).

[27]     *Id.*

[28]     We note that the court of appeals has decided two probation revocation cases since it issued its decision in this case: *Silas v. State*, 425 P.3d 197 (Alaska App. 2018) and *Charles v. State*, 436 P.3d 1084 (Alaska App. 2018). These cases are not before us on appeal, but to the extent that they are inconsistent with *Trumbly* and our opinion today, they are to be disregarded.

violation of one or more conditions of his [probation]."²⁹  Second, it must determine the disposition to be made once violation of the conditions of probation is established.  "[The probationer's] mental state at the time of the violation of the terms of his probation as well as at the time of the revocation hearing is relevant to the resolution of the second issue."³⁰  The good cause determination is one part of this second stage.³¹

        1.     The trial court has substantial discretion at the disposition stage.  A trial court can impose a sentence less than jail time or otherwise change the terms and conditions of probation without imposing full remaining jail time.³²  If a court wants to impose remaining jail time, it must make a finding of good cause.³³  A court can consider any relevant information in the record, including "the original offense, the offender, and the defendant's intervening conduct."³⁴

        Here, the court of appeals, relying on a 1977 case, stated "that conditions of probation must be 'reasonably related to the rehabilitation of the offender and the

---

**29**    *Trumbly*, 515 P.2d at 709-10 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479-80 (1972)) .

**30**    *Id.* at 710.

**31**    *See Holton v. State*, 602 P.2d 1228, 1239 (Alaska 1979).

**32**    *See* AS 12.55.086(c), AS 12.55.090(b); AS 33.05.070(b); *State v. Henry*, 240 P.3d 846, 848 (Alaska App. 2010) ("Under Alaska law, whenever a sentence includes suspended jail time and a concomitant term of probation, the sentence is inherently mutable:  the sentencing court retains the authority to alter the conditions of probation, to shorten or lengthen the probationary term, and to impose some or all of the previously suspended jail time.").

**33**    *See* AS 12.55.110(a).

**34**    *Betzner v. State*, 768 P.2d 1150, 1156 (Alaska App. 1989).

protection of the public[,] and [not] unduly restrictive of liberty.' "[35] This statement, while correct as far as it goes, is inaccurate because it is incomplete. In 1994 the Alaska Constitution was amended to expand the list of principles a court should consider: "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[36] We recently reaffirmed that "[e]ach component of a criminal sentence — including conditions of probation — must be reasonably related to at least one of these constitutional principles."[37] A court should consider all of these principles in making probation disposition decisions, not just those identified by the court of appeals.

We reaffirm the two-stage framework we originally announced in *Trumbly*. To the extent that the court of appeals' opinion conflicts with *Trumbly*, it was error.

**B. It Was Error To Interpret Pulusila's Probation Conditions As Requiring Knowing Possession Of The Prohibited Items.**

The allegations brought by Pulusila's probation officer were related to two probation conditions:

> You shall not use, possess, handle, purchase, give or administer any controlled substance, including marijuana, without a valid prescription. . . . You shall not have on your person, in your residence or vehicle or any vehicle under your control, any drugs or paraphernalia normally associated with the illicit use of drugs. . . . You shall submit to a search of your person, personal property, residence, vehicle or any vehicle over which you have control, for the presence of illicit drugs or drug paraphernalia.

---

[35] *Pulusila v. State*, 425 P.3d 175, 182 (Alaska App. 2018) (alterations in original) (quoting *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977)).

[36] Alaska Const. art. I, § 12.

[37] *State v. Ranstead*, 421 P.3d 15, 20 (Alaska 2018).

. . . .

You shall not own, possess, purchase, transport, handle or have in your custody, residence, or vehicle, any firearm, ammunition, explosives, or weapon(s) that is capable of inflicting bodily harm or incapacitation. You shall not carry any deadly weapon on your person except a pocket knife with a 3″ or shorter blade. You must submit to any search for the aforementioned weapons.[38]

The superior court found Pulusila in violation of his probation conditions by being in possession and control of the explosive device, ammunition, and drug paraphernalia found in the vehicle. The court offered the following reasoning in support of this finding:

I think the mens rea involved here is only that [Pulusila] needs to . . . have knowledge of what will be the conditions of violation. And if he has possession or control of these particular items and he knows that the condition is a violation, that's enough. . . . I don't think the State has to prove that he had a specific knowledge that each and every one of these items is in the vehicle or that he intended to have each and every one of these items in the vehicle.

The court went on to explain that "the responsibility should be on the person on probation . . . to make sure that they don't possess these items or don't violate the conditions. And I find that [Pulusila] . . . knew what the conditions were and it's his responsibility to make sure that he's not in possession or control of these items."

The court of appeals disagreed, instead holding that Pulusila's probation conditions "prohibited him from *knowingly* possessing the prohibited items found in the

---

38    The State argues that "the court of appeals adopted an unreasonably narrow view" of the probation conditions by distilling them to just "possession." We read the conditions expansively to include all terms, not just "possess." However, our decision does not turn on this distinction.

borrowed vehicle."[39] The court explained that the State was wrong in arguing that the conditions "prohibited Pulusila from being in control of a vehicle that had these prohibited items in it — even if Pulusila remained wholly ignorant of their presence" because its argument was "based on a misunderstanding of the law of possession."[40] Specifically, the court noted that Alaska criminal law requires the State to prove that a person engaged in a voluntary act of possessing or controlling an item to prove possession, and that this voluntary act requires knowledge.[41] While acknowledging that the statutory definitions apply only to the interpretation of criminal statutes, the court asserted that the laws "merely codify the common understanding of what 'possession' means" and that "Pulusila's conditions of probation must be interpreted in light of this common understanding."[42] The court stated that "it is unclear what public benefit would be achieved by sending probationers back to jail for 'possessing' explosives, ammunition, or drug paraphernalia that they did not know they had."[43] The court held "that Pulusila's two conditions of probation prohibited him from *knowingly* possessing the listed prohibited items. Thus, without proof that Pulusila knew that these items were

---

[39]     *Pulusila*, 425 P.3d at 181 (emphasis in original).

[40]     *Id.* at 182.

[41]     *Id.*; *see also* AS 11.81.600(a) ("The minimal requirement for criminal liability is the performance by a person of conduct that includes a voluntary act or the omission to perform an act that the person is capable of performing."); AS 11.81.900(b)(68) (defining "voluntary act" to include possession "if the defendant was aware of the physical possession or control for a sufficient period to have been able to terminate it").

[42]     *Pulusila*, 425 P.3d at 182.

[43]     *Id.*

in the truck, the superior court had no basis for finding that Pulusila violated these conditions of his probation."[44]

We approach this issue differently. We start by noting that the criminal code authorizes a sentencing court to place the defendant on probation "under conditions specified by the court."[45] Another section of the code allows the court to place the defendant on probation "upon the terms and conditions as the court considers best."[46] The legislature has therefore granted abundant discretion to the sentencing judge to impose the conditions "the court considers best" hemmed only by the requirement that these conditions must be reasonably related to the required constitutional sentencing principles.[47] We therefore interpret these conditions to effectuate the intent of the sentencing court "subject to construction according to the rules that apply to all written instruments."[48]

We disagree with the court of appeals' conclusion that the word "possession" must always be interpreted to include a requirement of knowledge. Under the criminal code " 'possess' means having physical possession or the exercise of dominion or control over property."[49] This definition is consistent with the way this term

---

[44] *Id.* (emphasis in original).

[45] AS 12.55.015(a)(2).

[46] AS 12.55.080.

[47] *See State v. Ranstead*, 421 P.3d 15, 20 (Alaska 2018).

[48] *See Pennington v. Emp'r's Liab. Assurance Corp.*, 520 P.2d 96, 97 (Alaska 1974).

[49] AS 11.81.900(b)(50).

is used in other areas of the law.[50] No element of knowledge is necessarily implied by this term.[51]

We also disagree with the court of appeals' conclusion that there is no public benefit to a condition that requires a probationer to avoid possessing explosives, ammunition, or drug paraphernalia, regardless of the probationer's actual knowledge. The benefit of such a condition is that the threat of punishment may cause the offender to "exert his faculties" to avoid a violation.[52]

> Even when an offender does not of his own accord realize that his conduct is wrongful, he can in many cases be made to take care. Coercion that causes the offender to pay attention can serve important social aims that would not be achieved by proscriptions that only come into effect when the transgressor recognizes the harm in his or her behavior.[53]

Therefore, this type of condition could make probationers "think[] before they act" in a way that will "reduce risky conduct."[54]

---

[50]     *Vezey v. Green*, 35 P.3d 14, 25 (Alaska 2001) ("Evidence of actual possession must be sufficient to alert a reasonably diligent owner to the possessor's exercise of dominion and control.").

[51]     *Cf. State v. Dutch Harbor Seafoods, Ltd.*, 965 P.2d 738, 739-40 (Alaska 1998) (addressing strict liability violations including possession of fish taken by an unregistered vessel); *McCann v. State*, 817 P.2d 484, 485 (Alaska App. 1991) (addressing strict liability convictions for the possession of undersized crab).

[52]     *See State v. Hazelwood*, 946 P.2d 875, 883 (Alaska 1997) (quoting H.L.A. HART, PUNISHMENT AND RESPONSIBILITY 134 (1968)).

[53]     *Id.*

[54]     *See id.* (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 47, at 337-38 (1972)).

We have recognized that this "principle of reasonable deterrence" may allow the government to impose strict liability for a criminal offense "when the failure to abide by a rule is inherently unreasonable."[55] For example, strict liability may be imposed

> (1) when "a person's conduct is hedged in by regulation, such that one may reasonably assume his or her routine decisions are guided by rules"; (2) when conduct is "*malum in se*," that is, so obviously wrong that all reasonable members of society recognize it as such; and (3) when violations "call for only a modest fine."[56]

A probation violation is not necessarily "malum in se" and the consequences are rarely limited to a modest fine. But in one respect, a probationer's situation is similar to a company in a highly regulated industry: a probationer may reasonably assume his routine decisions may be restricted by the rules of his probation.

This is not to suggest that a probation revocation proceeding is the same as a criminal trial.[57] Since probationers have already been convicted, they do not stand in the same position as ordinary citizens.[58] Therefore, the full protections of criminal law and procedure often do not apply to probationers.[59] We merely note that the "principle

---

[55]     *Jordan v. State*, 420 P.3d 1143, 1149 (Alaska 2018) (citing *Hazelwood*, 946 P.2d at 883).

[56]     *Id.* at 1149 (emphasis in original) (footnotes omitted) (quoting *Hazelwood*, 946 P.2d at 883-84).

[57]     *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973) ("A probation revocation hearing is not a criminal proceeding.").

[58]     *See Davenport v. State*, 568 P.2d 939, 947 n.20 (Alaska 1977).

[59]     *See, e.g.*, AS 12.55.085(b) (allowing probation officer to arrest probationer "without warrant or other process"); *United States v. Knights*, 534 U.S. 112, 121 (2001)

(continued...)

of reasonable deterrence" suggests that there may be situations when a probationer should be strictly accountable for a violation.[60]

We now turn to the interpretation of the probation conditions in this case. Conditions one and five required Pulusila not to possess any controlled substances, firearms, or explosives. As noted above, the court of appeals concluded "that Pulusila's two conditions of probation prohibited him from *knowingly* possessing the listed prohibited items."[61] The court thus held that "without proof that Pulusila knew that these items were in the truck, the superior court had no basis for finding that Pulusila violated these conditions of his probation."[62]

But it is not necessary to imply an element of actual knowledge to provide the probationer with fair notice that he must be careful to avoid a violation. We faced a similar problem in *State v. Rice*, which dealt with a regulation providing, "No person may possess or transport any game or parts of game illegally taken."[63] We recognized that this game violation was a regulatory crime that could be characterized as a strict

---

[59]    (...continued)
(applying lower "reasonable suspicion" standard to search of probationer's home, as opposed to higher "probable cause" standard); *Griffin v. Wisconsin*, 483 U.S. 868, 878-80 (1987) (allowing search of probationer's home "based upon a lesser degree of certainty than the Fourth Amendment would otherwise require"); *State v. Sears*, 553 P.2d 907, 913 (Alaska 1976) (holding that exclusionary rule does not apply to probation revocation proceedings).

[60]    *See Bearden v. Georgia*, 461 U.S. 660, 668 n.9 (1983) (stating that revocation may be proper even if probationer is not at fault for violation).

[61]    *Pulusila v. State*, 425 P.3d 175, 182 (Alaska App. 2018) (emphasis in original).

[62]    *Id.*

[63]    626 P.2d 104, 107 (Alaska 1981).

liability offense at common law.[64]   We nonetheless determined that, to provide a defendant with fair notice, the regulation should be strictly construed to require some degree of mens rea absent clear legislative intent to the contrary.[65]  We therefore required the prosecution to prove that the defendant "knew or should have known" that the game was illegally taken when he transported it.[66]

We believe the present case requires a similar balance between the requirement of fair notice and the requirement that a probationer take responsibility to avoid possession of contraband.  A probationer is in a position where he can expect his conduct to be tightly supervised.  He should not be able to rely on willful ignorance to justify a violation.  On the other hand, he should not ordinarily be required to take responsibility for circumstances he cannot reasonably avoid.  We will generally construe similar conditions to refer to careless or negligent misconduct — when the probationer knows or reasonably should know he is in possession of contraband.  Such a condition will not be interpreted to impose strict liability unless it does so explicitly.

## V.   CONCLUSION

We REVERSE the court of appeals' decision.  We REMAND this matter to the superior court to determine whether Pulusila "knew or should have known" that he was in possession of contraband.

---

[64]   *Id.* at 108.

[65]   *Id.* at 108-09.

[66]   *Id.* at 109-10.